Kenneth McClure **YOUNG, II,**
**Appellant,**

v.

**Warren KANN and Jane Doe,**
**Appellees.**

**No. 89–5437.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
August 23, 1990.

Decided March 5, 1991.

---

Kenneth McClure Young, II, Bastrop, Tex., pro se.

James J. West, U.S. Atty., John C. Gurganus, Jr., Asst. U.S. Atty., Scranton, Pa., for appellees.

Before BECKER, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This civil rights case, brought by a federal prisoner acting *pro se*, presents for us a first impression question of the due process rights of a prisoner to the production of documentary evidence at a prison disciplinary hearing. Plaintiff Kenneth McClure Young, II, who lost substantial good time credit as the result of two prison disciplinary hearings, brought suit in the district court for the Middle District of Pennsylvania claiming that the disciplinary hearing officer, defendant Warren Kann, violated his due process rights by refusing to produce a letter in which Young allegedly threatened his cellmate, even though the letter formed part of the basis for the disciplinary charges. Although Young contended that the letter contained no such threat, the district court dismissed the complaint, *sua sponte*, as legally frivolous under 28 U.S.C. § 1915(d).

We hold that Young's due process claims are arguably meritorious, and that the district court erred in dismissing the com-

plaint. Accordingly, the order of the district court will be vacated and the case remanded for service of process on the defendants and for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

While Young was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania, he was charged with making threats of bodily harm to another inmate and refusing a cell assignment.[1] The prison incident report stated that Young had physically and verbally threatened his cellmate when a guard attempted to return him to their cell. Prior to this incident, the report claimed, Young had given to the guard a letter that also contained threats against this cellmate. At the hearing on this charge, Young denied having made any threatening statements, either verbal or written. He further claimed that he had informed Kann that the letter had been confiscated by prison authorities and that it should be produced in order to demonstrate that it contained no threatening remarks.

Because Kann did not have a copy of the letter, he excused Young from the room and called the reporting officer into the hearing room and questioned him concerning the letter's contents. After the reporting officer was excused, Young was called back and informed by Kann that the letter itself was not relevant and that the hearing would proceed. Young reasserted that the letter contained no threats and informed Kann that he was not prepared to proceed unless the letter was produced. Kann nonetheless elected to proceed.

When the hearing resumed, Young informed Kann that, in the days preceding the incident, his cellmate had assaulted him, threatened to rape him, and threatened his life.[2] Although Young admitted to banging a milk crate against his cell door, he denied that he had physically or verbally threatened his cellmate during the incident. Young was found guilty and received a sanction of 30 days in disciplinary segregation and forfeiture of 40 days statutory good time.[3]

Following the hearing, Kann filed a Discipline Hearing Officer Report. Although the report stated that his decision was supported by Young's letter, Kann apparently relied upon the guard's oral summary of its contents, rather than his own review of the letter itself.[4] In any event, the copy of the letter provided in Young's appendix contains no threatening remarks of any kind.[5]

---

1. Subsequent to these incidents, Young was transferred to the Federal Correctional Institution at Phoenix, Arizona, and then to the Federal Correctional Institution at Bastrop, Texas, where he was incarcerated at the time of this appeal.

2. In a subsequent letter to the warden and others, Young stated that a few days after the incident which led to the first hearing, his cellmate had in fact orally raped him while holding a razor blade against his throat.

3. Young's administrative appeal of Kann's decision was denied by the Bureau of Prisons Regional Director.

4. The inference that Kann relied upon the guard's testimony, instead of his own review of the letter, clarifies a contradiction in the Discipline Hearing Officer Report. Kann's report stated that no documentary evidence was considered in addition to the incident and investigative reports. However, Kann lists the "specific evidence relied upon to support findings" as the following:

1) Officer's statement that he observed ... [plaintiff] Young pick up a milk crate and pound the cell door with it, when attempting to put [plaintiff's cellmate] in his cell.
2) A note that inmate Young wrote that indicated that harm would come to [plaintiff's cellmate] if he was placed back in his cell.
3) Inmate Young's admission to the charges that he did threaten [his cellmate] and refused to allow him in his cell.
Kann's report also stated that Young had no problems with the incident report and that he was ready to continue with the hearing, contradicting Young's claim that he had insisted that he was unprepared and unwilling to proceed.

5. In the last paragraph of this letter, Young does state "[w]ell sir, either you do something about this or I will because by george I've reached my limit." While this may be construed as a vague threat to take future action of some sort, it cannot reasonably be interpreted as a threat of bodily harm against his cellmate.

Although a copy of this letter was included in the appendix, it does not appear to have been attached to Young's complaint or otherwise

Young's complaint in the district court alleges that, during the prison disciplinary hearing referred to above and at a second hearing, Kann and an unnamed stenographer (Jane Doe) violated his rights under the fifth and eighth amendments. Prior to service of process upon the defendants, however, the district court dismissed the complaint as legally frivolous and certified that any appeal from the order would be frivolous and not taken in good faith pursuant to 28 U.S.C. § 1915(d).[6] This appeal followed. The United States Attorney has entered an appearance and filed a brief.

## II. THE FIRST DISCIPLINARY HEARING

### A. Standard of Review

██ Because this case involves only issues of law, our review of the district court's dismissal of Young's complaint as legally frivolous is plenary. *Roman v. Jeffes,* 904 F.2d 192, 194 (3d Cir.1990) (citing *Wilson v. Rackmill,* 878 F.2d 772, 774 (3d Cir.1989)). Dismissal under 28 U.S.C. § 1915(d) is proper when the complaint is based upon an "indisputably meritless legal theory or on completely baseless factual contentions." *Wilson,* 878 F.2d at 774; *see also, Neitzke v. Williams,* 490 U.S. 319, 327–28, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). This standard is more liberal than that governing cases in which the defendants have been served with and answered the complaint. There, the question is whether Young has in fact stated a due process (or other) claim.

### B. The Alleged Due Process Violations

██ The overarching authority is *Wolff v. McDonnell,* 418 U.S. 539, 555–56,

94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974), in which the Supreme Court held that, while prisoners retain certain basic constitutional rights, including the protections of the due process clause, prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment. *Wolff,* also holds, however, that a prisoner has a constitutionally protected liberty interest in good time credit, and it enumerates what due process requires when a prison disciplinary hearing may result in loss of such credit. *Id.* at 556–57, 94 S.Ct. at 2974–75.

██ First, a prisoner must receive written notice of claimed violations at least 24 hours in advance of the hearing and must be provided with a written summary of evidence relied upon by the fact-finder in reaching its disciplinary decision. *Id.* at 563–64, 94 S.Ct. at 2978–79. Second, "an inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense." *Giano v. Sullivan,* 709 F.Supp. 1209, 1214 (S.D.N.Y.1989) (citing *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978, and *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986)). "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing. ..." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979.[7]

filed with the district court. Similar letters written by Young requesting to be moved did accompany his complaint, but none contained threats against his cellmate. The fact that the actual letter in question may not have been before the district court does not affect our review of the dismissal of Young's complaint as frivolous given the very strict standards for dismissal pursuant to 28 U.S.C. § 1915(d). *See infra* at 1399, 1404.

6. Young does not challenge on appeal the district court's dismissal of the portion of his complaint asserting eighth amendment violations.

The portions of Young's appeal that relate to his second disciplinary hearing and to his claims that Kann and stenographer Jane Doe conspired to alter the transcript are discussed *infra* Part III and n. 17.

7. Unlike the prisoner in *Wolff,* whose claims against state prison officials proceeded under 42 U.S.C. § 1983, Young's claims against a federal prison official for violating his constitutional rights are bottomed on the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ Under the caselaw, a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities. We note that the discretion to be accorded prison authorities in this area is quite broad. As stated by the Court in *Wolff:*

> We should not be too ready to exercise oversight and put aside the judgment of prison administrators.... [W]e must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

418 U.S. at 566, 94 S.Ct. at 2979–80; *see also Bell v. Wolfish,* 441 U.S. 520, 527, 547, 99 S.Ct. 1861, 1868, 1878, 60 L.Ed.2d 447 (1979). However, the discretion afforded prison officials is not without limits. As we remarked in *Woods v. Marks,* 742 F.2d 770 (3d Cir.1984), a case involving a prisoner's right to call witnesses at a disciplinary hearing, "[t]he policy of deference to the judgment of prison officials does not require ... that a reviewing court defer to the arbitrary denial of an inmate's limited right[s]." *Id.* at 773.

Based upon the factual allegations in Young's complaint, there do not appear to be any security reasons for denying Young's request to produce his letter. Nor has Kann proffered any such reasons. The security issues that concerned the *Wolff* Court were the risk of death or injury to inmate witnesses and informants identified at hearings or in produced documents,[8] as well as the potential for breakdown in authority, order and discipline inside the institution.[9] 418 U.S. at 567–69, 94 S.Ct. at 2980–81. None of these concerns appear to be implicated in the instant case because no witnesses were involved and no informants would be revealed by the production of the letter that Young admits having written.

This court heretofore has not been called upon to apply the requirements of *Wolff* to determine the extent of a prisoner's right to produce and view documentary evidence at a disciplinary hearing. We are aided in our analysis by three district court decisions. In *Giano v. Sullivan,* 709 F.Supp. 1209, 1213 (S.D.N.Y.1989), a prison employee assigned to assist a prisoner failed to produce certain investigative reports requested by the prisoner. The hearing offi-

---

We recognize that, on remand, Kann may claim that his discretionary actions as a Disciplinary Hearing Officer are entitled to qualified immunity from a *Bivens*-type action. *See Cleavinger v. Saxner,* 474 U.S. 193, 203–08, 106 S.Ct. 496, 501–04, 88 L.Ed.2d 507 (1985). However, we also point out that the due process violations alleged by Young have been "clearly established" by *Wolff* and its progeny, as well as by their codification at 28 C.F.R. §§ 541.10–541.20. *See Anderson v. Creighton,* 483 U.S. 635, 638–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987) (holding that federal officer named in *Bivens* action is not protected by qualified immunity if the claimed right was clearly established, so that a reasonable officer would realize the violation); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (whether qualified immunity protects discretionary actions of governmental official depends upon the "objective reasonableness of an official's conduct, as measured by reference to clearly established law").

8. As the *Wolff* Court noted:

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.

> 418 U.S. at 562, 94 S.Ct. at 2978.

9. With some prisoners, the Court noted, "it may be essential that discipline be swift and sure." 418 U.S. at 563, 94 S.Ct. at 2978. Kann has not argued, however, nor does it appear probable, that delaying plaintiff's hearing would produce a significant "interference with the swift punishment that ... may be essential to carrying out the correctional program of the institution." *Id.* at 566, 94 S.Ct. at 2979.

cer ignored the prisoner's requests for the production of these reports, saying that he did not have them with him, and continued with the hearing despite the prisoner's repeated protests that he was not prepared to proceed. *Id.* Not having the reports, the hearing officer relied instead upon the testimony of the investigating officer and a corrections officer. *Id.* at 1211. The court found that the reason proffered by the prison for withholding the reports from the inmate, the protection of witness identity, was not supported by the record. *Id.* at 1216. The court thus held that the prisoner was "unconstitutionally denied his right to marshal evidence and present a defense to the disciplinary charges against him." *Id.*[10]

Like the prisoner in *Giano,* Young claims that he twice attempted to convince Kann to delay or postpone the hearing so that his letter, which had been confiscated by the authorities, could be produced. Unlike the prisoner in *Giano,* however, Young was not allowed to be present during the testimony of the investigating officer, a fact which, if true, further deprived him of the ability to marshal a defense.

In *Muhammad v. Butler,* 655 F.Supp. 1470 (D.N.J.1987), a prison investigator was informed of an inmate's planned escape during a telephone call from the inmate's former lover. *Id.* at 1471. At a subsequent disciplinary hearing, the prisoner was not allowed to hear a tape recording or even to see a transcript of the call. *Id.* The court found that the security reasons proffered by the prison for denying the inmate's access to this evidence were "unpersuasive." *Id.* The *Muhammad* court held that the contention made by the hearing officer—that so long as the alleged contents of the telephone conversation were conveyed to the prisoner, an actual transcript or recording of the call need not be presented to him—did not pass constitutional muster, and that the prisoner's "right to present a defense was clearly

abridged by his inability to review these statements." *Id.* at 1472.

Although the district court here concluded that "[since] defendant Kann had a summary of Young's letter in the Incident Report and a statement from the reporting officer ... [t]here was no need for the letter to be produced at the first hearing," we agree with the *Muhammad* court that this approach does not satisfy the requirements of due process.[11] Furthermore, we disagree with the possible argument that, even if Young's due process rights were violated by Kann's refusal to order production of the letter, such a violation is without consequence since Young admits writing the letter, should have remembered its contents, and could thus effectively defend against the guard's testimony. Such an argument ignores Young's claims that he did not know the guard's specific testimony and that, without the document, he did all that he could to support his assertions: namely, deny the guard's claim that the letter contained threatening statements.

Finally, in *McIntosh v. Carter,* 578 F.Supp. 96 (W.D.Ky.1983), prison authorities were informed by another inmate of a note allegedly written by prisoner McIntosh asking the informer to help smuggle drugs into the prison. *Id.* at 97. After obtaining a handwriting sample from McIntosh's cell, a prison investigating officer concluded in his report that the drug smuggling note was written by McIntosh. *Id.* At McIntosh's disciplinary hearing, the committee apparently did not have the drug smuggling note, but instead relied solely on the investigator's report. *Id.* at 98. The prison authorities claimed that the note need not be produced at the hearing because only its contents and the handwriting comparison proving McIntosh's authorship were relevant to the charges against him, both of which were summarized in the investigator's report. *Id.* The court, however, held that the hearing officer had vio-

---

**10.** The *Giano* court relied upon *Eng v. Coughlin,* 858 F.2d 889 (2d Cir.1988), where the court opined that prison authorities violated the due process rights of a prisoner by proceeding with a hearing when his assigned assistant had been

unable to produce documents for use in the preparation of his defense. *See id.* at 897–98.

**11.** *See* district court order and accompanying memorandum at 8.

lated McIntosh's due process rights by refusing to allow him to see the note he allegedly had written. *Id.* at 99. Absent a valid security reason, the court maintained, "McIntosh should be entitled to view the evidence against him." *Id.*

Although the prisoner in *McIntosh* had a greater need to "view the evidence against him" due to the potential for fabrication of incriminating evidence by hostile fellow inmates, we find the holding in that case to be directly applicable to Young's situation. Like the hearing officer in *McIntosh*, Kann appears to have relied upon the investigator's portrayal of the letter, denying Young the opportunity to prepare a defense based upon its actual contents.

We find these cases persuasive and elect to follow them. Assuming that Young's factual allegations are true and that Kann cannot demonstrate a valid security reason on remand, we believe that Kann's refusal to order production of Young's letter at the disciplinary hearing violated Young's due process rights. By denying Young the opportunity to refute the charges against him through the presentation of his own letter, confiscated by the authorities and then used to discipline him, Kann violated the due process rights accorded Young under *Wolff* to "present documentary evidence" and "marshal the facts in his defense." 418 U.S. at 566, 564, 94 S.Ct. at 2979, 2978. The district court's contrary conclusion was erroneous.

Further, we think that Kann's alleged sole reliance upon the oral summary of the contents of the letter provided, outside of Young's presence, by the guard at the hearing may itself be a due process violation.[12] We have warned against hearing officers relying exclusively upon a prison employee's oral summary of information implicating the prisoner. In *Helms v. Hewitt*, 655 F.2d 487 (3d Cir.1981), *rev'd on*

*other grounds*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *on remand*, 712 F.2d 48 (3d Cir.1983), the hearing officer relied solely upon an investigating officer's summary of what an unidentified informer had told him concerning the charges brought against the inmate. We held that:

> A determination of guilt on such a record, with no primary evidence of guilt in the form of witness statements, oral or written, or any form of corroborative evidence, amounts to a determination on the blind acceptance of the prison officer's statement. Such a practice is unacceptable; it does not fulfill *Wolff's* perception of "mutual accommodation between institutional needs and objections" and constitutional requirements of due process.

*Helms*, 655 F.2d at 502. Although the danger in *Helms* related more to the risk of relying upon hearsay from an unidentified informer, we find our warning against dependence upon a prison official's account without "any form of corroborative evidence" to be instructive for our present purpose. *See also Hensley v. Wilson*, 850 F.2d 269, 276–77 (6th Cir.1988) (where only evidence to support disciplinary committee's decision was the statement of an unidentified informer, committee failed to satisfy due process by merely accepting investigatory officer's version of informant's statement and his conclusion that informer was reliable and more credible than prisoner).

C. *Does Other Evidence in the Record Support the 28 U.S.C. § 1915 Dismissal?*

Even if Young's due process rights were violated at the hearing, the other evidence of threats made to his cellmate during the incident may support the district court's dismissal of the complaint as legally frivolous. We note in this re-

---

**12.** *See Hayes v. Walker*, 555 F.2d 625, 631–33 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (holding that the district court erred in dismissing the prisoner's complaint, which alleged due process violations, for failure to state a claim, where the hearing officer's report stated that he had merely adopted the violation and investigation reports when reaching his decision); *McCall–Bey v. Franzen*, 585 F.Supp. 1295, 1298 (N.D.Ill.1984) (holding that the prisoner's due process rights were violated when the hearing officer's written summary of the evidence relied upon in reaching his decision reported that he considered only the correctional officer's statement and the investigatory report).

gard that the district court's scope of review of the disciplinary hearing officer's decision was limited to the narrow "some evidence" standard. *See Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (disciplinary board decision in state correctional institution must be supported by "some evidence").

Young admitted to banging the cell door with a milk crate but denied threatening to hit the guard or his cellmate with the crate or in any other way threatening his cellmate during the incident. Young essentially did admit, however, that he refused to accept a program assignment, by attempting to prevent the guard from allowing his cellmate to reenter the cell. The district court's dismissal of Young's complaint was therefore justified as to this charge. However, with respect to the charge of threatening his cellmate, the conflicting accounts of Young's behavior do not justify the district court's dismissal under 28 U.S.C. § 1915(d), particularly in light of Kann's refusal to produce the allegedly threatening letter.

In *Chavis v. Rowe*, 643 F.2d 1281 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), the court held that a prisoner was denied the minimum due process requirements mandated by *Wolff* where the prison disciplinary committee denied him access to an investigatory report containing exculpatory witness statements. *Id.* at 1286–87. Even though the disciplinary committee considered this report when reaching its conclusions, the court found that the prisoner was "deprived of his ability to make his own use of this exculpatory evidence before it was given to the fact-finders." *Id.* at 1286. "If [the prisoner] had been given the material, and argued it to the Committee, it may have been forced to consider the material more seriously." *Id.* We agree with this approach.[13]

Not only does Young claim that he was improperly denied access to the letter in order to demonstrate that it did not contain threatening remarks, but he also asserts that his ability to prepare a defense was abridged by Kann's decision that prevented him from hearing or responding to the guard's testimony regarding the content of the letter. If his allegations are true, Young was denied the opportunity to hear whatever else the guard may have testified to concerning his alleged physical threats toward his cellmate. Had Young been able to boost his credibility by impeaching the guard's testimony concerning the letter's content and responding intelligently to any testimony concerning the confrontation at the cell door, Kann may have "consider[ed] ... more seriously," *Chavis*, 643 F.2d at 1286, Young's contention that the banging of the milk crate against the door was neither intended, nor should have been perceived, as a threat of bodily harm toward his cellmate. As the court noted in *Daigle v. Hall*, 387 F.Supp. 652, 660 (D.Mass. 1975), "if the testimony against the inmate is not to be presented directly by witnesses, it nevertheless must be revealed to the inmate with sufficient detail to permit the inmate to rebut it intelligently." Thus, we think that the denial of Young's due process rights was potentially outcome determinative, at least regarding the degree of severity of the sanctions imposed.[14]

---

13. *See also Giano*, 709 F.Supp. at 1210. Giano was charged with escape and setting a fire during the escape. *Id.* There was basically no dispute that Giano did in fact escape because he was recaptured along with his two escapee associates. *Id.* at 1211. There was more of a factual dispute concerning the extent to which Giano, as opposed to other prisoners, participated in the setting of incendiary devices that spewed forth smoke and sparks as a diversionary tactic. *Id.* at 1211–12, 1215. However, because Giano was denied his constitutional right to marshal facts and prepare a defense, *see supra* at 1401, the court held: "that each of the charges against petitioner was supported by substantial evidence is beside the point." *Giano*, 709 F.Supp. at 1216.

14. Young claims that his conduct and actions were in self-defense since his cellmate had assaulted him and threatened to kill him, and that he had sent a number of letters to the warden and others, requesting to be moved to another cell. Young further claims that, a few days after the incident which led to his first hearing, he was raped by his cellmate. *See supra* n. 2 and accompanying text. It is noteworthy in this regard that prison officials have an obligation to take reasonable measures to guarantee the safe-

Based upon the foregoing, we conclude that Young's due process claims are not based upon an "indisputably meritless legal theory or on completely baseless factual contentions." *Wilson*, 878 F.2d at 774. Accordingly, we hold that the district court erred in dismissing as legally frivolous the portions of Young's complaint relating to the non-production of the letter.

While perhaps not rising to the level of constitutional deprivations under *Wolff*, Kann also may have violated an opaque regulatory mandate, further emphasizing the unfairness of the process accorded Young at his first hearing. If Young's allegations are true, Kann violated the procedures prescribed by 28 C.F.R. § 541.17(d) (1990), which provides that "[a]n inmate has the right to be present throughout the DHO [Disciplinary Hearing Officer] hearing except during a period of deliberation or when institutional security would be jeopardized. The DHO must document in the record the reason(s) for excluding an inmate from the hearing." Kann proffered no security reasons for refusing to allow Young to be present while the guard was being questioned, nor does it appear that any such reasons exist.

Although he does not have an absolute right to confront and cross-examine witnesses at a prison disciplinary hearing, *see*

*Wolff*, 418 U.S. at 567–69, 94 S.Ct. at 2980–81; *Baxter v. Palmigiano*, 425 U.S. 308, 321–22, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976), Young could argue that 28 C.F.R. § 541.17(d) at least establishes a right to be present during the testimony of an adverse witness. In *Bills v. Henderson*, 631 F.2d 1287, 1296–99 (6th Cir.1980), the court held that the extensive procedural protections contained in state prison regulations, including the right of a prisoner to cross-examine witnesses through a "resident advisor" and to "remain in the hearing room until all witnesses and evidence have been heard," cannot serve as the basis for a civil rights claim in and of themselves where they are beyond the scope of those procedural requirements prescribed by *Wolff*. However, because the procedures codified at 28 C.F.R. §§ 541.10–541.20 largely track the due process requirements established in *Wolff*, Young may have a persuasive argument that 28 C.F.R. § 541.17(d) does establish a due process right cognizable for purposes of a *Bivens* action, *see supra* n. 7. Regardless of the constitutionality of the right to be present during the testimony of an adverse witness at a hearing, we agree with the court in *McIntosh* that "clearly the better practice would be to allow confrontation if it would not interfere with the functioning of the prison." 578 F.Supp. at 98.[15]

ty of inmates and to provide them with some protection from the dangers of prison life. *See Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); *Morgan v. District of Columbia*, 824 F.2d 1049, 1057 (D.C.Cir.1987). "'Deliberate indifference on the part of prison officials to violent attacks and sexual assaults by other inmates is proscribed by the eighth amendment.'" *Riley v. Jeffes*, 777 F.2d 143, 146 (3d Cir.1985) (quoting *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985)). As we noted in *Riley*, "[a]n inmate's right to be protected from constant threats of violence and sexual assault from other inmates does not require that he wait until he is actually assaulted before obtaining relief." 777 F.2d at 147 (citations omitted); *see also Ali v. Gibson*, 483 F.Supp. 1102, 1117 (D.V.I.1980) (prisoner has a right under the eighth and fourteenth amendments to be reasonably protected from the threat of violence by other inmates and need not wait until an actual attack has occurred to obtain relief); *West v. Rowe*, 448 F.Supp. 58, 60 (N.D.Ill.1978) (inmate's successive letters to numerous prison officials notifying them that his life was threat-

ened by other inmates gave rise to a constitutional duty on part of prison authorities to take reasonable measures to ensure the inmate's safety).

**15.** It is important to note that Kann is entitled to qualified immunity from a *Bivens* action if the procedural requirement of a federal regulation is not based upon a "clearly established" constitutional right. *See supra* n. 7; *see also Childress v. Small Business Admin.*, 825 F.2d 1550, 1552–53 (11th Cir.1987) (holding that not all of the procedural requirements of Farmers' Home Administration regulations relating to notice of loan cancellation were based upon clearly established constitutional due process rights, and federal officers thus retained qualified immunity from *Bivens* action for violation of those requirements); *Arcoren v. Peters*, 829 F.2d 671, 676–77 (8th Cir.1987) (*en banc*) (violation of a regulation cannot support a *Bivens* action unless the regulation supplies the basis for the claim of a constitutional right); *Culbreath v. Block*, 799 F.2d 1248, 1250–51 (8th Cir.1986) (federal officials do not lose qualified immunity from *Bi-*

## III. THE SECOND DISCIPLINARY HEARING

■ At his second disciplinary hearing, Young was charged with disruptive conduct for intentionally clogging the toilet in his cell, causing it to overflow onto the cellblock range. After essentially admitting that he intentionally caused the toilet to overflow, Young was found guilty of disruptive behavior and received a sanction of 15 days in disciplinary segregation and forfeiture of 8 days of statutory good time.

Young claims that his due process rights were violated at this second hearing because he was forced to proceed without being presented with a copy of the investigator's report. Young had no right to receive a copy of the investigation report, however, because he waived his right to have a staff representative present. *See* 28 C.F.R. § 541.14(b)(2); *Mendoza v. Miller*, 779 F.2d 1287, 1294 (7th Cir.1985); *see also infra* n. 16. Furthermore, Young submitted a written statement of his account of the incident in which he does not deny

(indeed, he basically admits) engaging in the disruptive behavior for which he was charged, presenting justifications for his actions and explaining that he was in an "ebullient" state. At the hearing, Young did not deny the charges and would only state that he "did what [he] had to do." Thus, Young's due process claims stemming from his second disciplinary hearing "lack an arguable factual or legal basis." *Wilson*, 878 F.2d at 774. Accordingly, we hold that the district court did not err in dismissing this part of his complaint as legally frivolous.[16]

## IV. CONCLUSION

We will affirm the district court's dismissal as legally frivolous of the portion of Young's complaint regarding his conspiracy claims, his due process claims related to the charge of refusing to accept a program assignment brought against Young at his first disciplinary hearing, and his due process claims related to his second hearing. Concomitantly, we will affirm the dis-

---

vens *action unless violation of federal regulation bears upon òr implicates a clearly established constitutional right).*

While perhaps not cognizable for the purposes of a *Bivens* action for the foregoing reasons, we also note that Kann's alleged failure to provide plaintiff's staff representative with a copy of the investigative report violated the procedures established under 28 C.F.R. § 541.14(b)(2) (1990), which provides that:

> The inmate does not receive a copy of the investigation. However, if the case is ultimately forwarded to the Disciplinary Hearing Officer, the DHO shall give a copy of the investigation and other relevant materials to the inmate's staff representative for use in presentation on the inmate's behalf.

Since Young was assisted by a staff representative, who accompanied him to his first hearing, his representative, it would appear, should have been provided with a copy of the investigation report. *See also Mendoza v. Miller*, 779 F.2d 1287, 1294 (7th Cir.1985).

**16.** Young further claims that defendants Kann and Jane Doe conspired to misrepresent his statements at both hearings in order to create a record which indicated that no due process violations had occurred. Young's only support for these claims are the apparent contradictions contained in Kann's Discipline Hearing Officer Report for the first hearing and his claim that the transcripts of both hearings attribute statements to him that he did not make and that

damage his due process claims. We do not read Kann's report as containing contradictions, *see supra* n. 4 and accompanying text, and Young has alleged no facts whatsoever to support his bald assertion that Kann and the stenographer acted in concert to alter the transcript.

Since Young's conspiracy claims do not appear to be based in fact, but merely upon his own suspicion and speculation, we hold that the district court did not err in dismissing them as legally frivolous pursuant to 28 U.S.C. § 1915(d). *See Neitzke,* 490 U.S. at 327–28, 109 S.Ct. at 1832–33; *see also Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 595 F.Supp. 1385, 1400 (D.Del.1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("[i]t is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (citing *Black and Yates, Inc. v. Mahogany Assoc., Inc.,* 129 F.2d 227, 231, 232 (3d Cir.), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942))). Furthermore, even if he were given a chance to amend his complaint, no layering of factual detail upon Young's claims would cure the clearly baseless allegations upon which they are founded. *See Roman v. Jeffes,* 904 F.2d 192, 195 n. 4 (3d Cir.1990) (following *Neitzke,* dismissal under § 1915(d) "is appropriate only when the complaint is truly frivolous and no amendment would cure the defect").

**1406**

missal as to Jane Doe defendant. We will vacate the order of the district court dismissing as legally frivolous pursuant to 28 U.S.C. § 1915(d) the portions of Young's complaint related to Kann's refusal to produce the allegedly threatening letter at the first disciplinary hearing, and remand the case for service of process on the defendant and for further proceedings consistent with this opinion.