CLD-240                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1097
_____

DARNELL PITTMAN SR.,
                                    Appellant

v.

B.A. BLEDSOE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 10-cv-00788)
District Judge:  Honorable Richard P. Conaboy
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 21, 2011
Before:  RENDELL, FUENTES AND SMITH, Circuit Judges

(Opinion filed: August 19, 2011)
_____

OPINION
_____

PER CURIAM

        Darnell Pittman, Sr. appeals from an order of the United States District Court for

the Middle District of Pennsylvania denying his habeas petition filed pursuant to

28 U.S.C. § 2241.  For the reasons below, we will summarily affirm.

        While incarcerated at USP Lewisburg, Pittman was charged with threatening

another with bodily harm. According to an incident report, Officers Young and Miller were conducting the 10:00 p.m. count on July 26, 2009, when they attempted to close the food slot on Pittman's cell. Pittman pushed the food slot back open, made a motion like he was going to throw something, and yelled that he was "going to get you next week" and "going to throw" urine and feces on Officer Young. As part of the investigation, Pittman was interviewed, advised of his rights, and provided with a copy of the incident report. The investigating officer noted that Pittman's attitude was poor and that he stated that the report was "a lie." The investigating officer determined that the report was "justified and warranted." Pittman appeared before the Unit Disciplinary Committee ("UDC"), but declined to make a statement. Based on the severity of the charges, the Unit Disciplinary Committee ("UDC") referred the matter to the Disciplinary Hearing Officer ("DHO").

Pittman appeared before the DHO on August 7, 2009, but requested that the hearing be postponed so that he could review videotape footage of the incident and obtain testimony from Officer Miller and two inmate witnesses. The DHO granted Pittman's request, and the hearing was rescheduled for the morning of August 13, 2009. In the interim, the DHO watched the videotape and contacted Officer Miller, who was unavailable to testify in person because he worked the evening shift. Officer Miller prepared a written statement dated August 11, 2009. At the rescheduled hearing, Pittman was assisted by a staff representative. Pittman denied the allegations, maintaining that he "tripped on his shower shoes and fell into the wicket," thereby making it appear that he slammed open the food slot door. Pittman also presented the testimony of two inmate

2

witnesses who stated that they did not hear Pittman threaten Officer Young.

The DHO concluded that Pittman committed the prohibited act, noting that the charge was supported by the greater weight of the evidence. In particular, the DHO stated that he relied on the written account of Officer Young, Officer Miller's memorandum, and the videotape footage, in which "Officer Young is observed leaping back from Pittman's cell door, to the left and rear." The DHO ordered Pittman to serve 30 days of disciplinary segregation, disallowed 27 days of good conduct time, and imposed a loss of commissary privileges for 120 days. The Bureau of Prisons denied Pittman's administrative appeal.

In April 2010, Pittman filed a § 2241 habeas petition challenging the loss of good conduct time, alleging the violation of his due process rights at the disciplinary hearing. In response, the Government argued that Pittman's disciplinary hearing complied with all that due process requires. The Magistrate Judge recommended that the habeas petition be denied, concluding that Pittman "received written notice of the charges against him not less tha[n] 24 hours before the hearing; was given a hearing before an impartial decision maker; was given a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action taken; and was allowed to call witnesses and present documentary evidence in his own defense." Over Pittman's objections, the District Court adopted the Magistrate Judge's Report and Recommendation and denied the § 2241 petition. Pittman appealed.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous

3

standard to its findings of fact. See Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002). A complaint challenging the loss of good-time credits is cognizable under § 2241. Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

"[A] prisoner has a constitutionally protected liberty interest in good time credit." Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Thus, a prisoner facing the loss of good-conduct time as a result of an infraction is entitled to certain procedural protections in the disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974). The minimum required protections are: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill, 472 U.S. 445, 454 (1985). Notably, due process requires that an inmate be permitted to "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. "Although prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion afforded prison officials is not without limits.'" Burns v. PA Dept. of Corr., 642 F.3d 163, 173 (3d Cir. 2011) (quoting Young v. Kann, 926 F.2d 1396, 1400 (3d Cir. 1991)).

Pittman argues that his due process rights were violated because the DHO failed to provide him with a copy of Officer Miller's August 11, 2009 statement and refused to allow him to view the videotape footage of the incident. In support of these contentions,

4

Pittman cites 28 C.F.R. § 541.14(b)(2) (2010), which provides in relevant part that "the DHO shall give a copy of the investigation and other relevant materials to the inmate's staff representative for use in presentation on the inmate's behalf." Here, however, the DHO's report indicates that "both Pittman and his staff representative were made aware of the content of Officer Miller's statement during the hearing" and that the "video evidence was reviewed with Pittman."[1] For instance, the DHO "informed Pittman that [in] the video footage of the incident . . . the reporting officer is observed jumping back suddenly from the [cell] door, supporting the reporting officer's written account that it appeared to [him] that Pittman was going to throw something on the reporting officer." Pittman had an opportunity to refute Officer Miller's statement and the videotape footage, and his objections were noted in the DHO's report. Moreover, according to the DHO, Pittman stated at the hearing "that he made no specific requests of his staff representative." Under these circumstances, we conclude that no due process violation resulted from the DHO's refusal to allow Pittman to review Officer Miller's statement and view the videotape. Cf. Burns, 642 F.3d at 174 (holding that "inmate's right to procedural due process is violated when a hearing examiner simply fails to view available evidence to determine its relevance and suitability for use at a disciplinary hearing.").

Pittman also claims that the DHO violated his due process right to an impartial decision-making body by acting as an independent investigator, "fabricat[ing]" statements, and "clearly display[ing] a bias[ed] demeanor." In particular, Pittman

---

[1] The DHO's report also indicates that Pittman's staff representative "stated that he reviewed the video footage of the incident . . . [and] had no further information to present, nor statement to make, regarding the case."

5

complains that the DHO took "it upon himself to review the video footage outside of the hearing," thereby improperly "gain[ing] personal knowledge of the incident." But Pittman himself requested that the videotape footage be considered, and review of that footage did not transform the DHO into an investigator. 28 C.F.R. § 541.8(b) (providing that the "DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident."). Pittman also suggests that the DHO misrepresented his contact with Officer Miller. As noted in the DHO's report, Officer Miller was unavailable to testify at the hearing on August 13, 2009, but submitted a statement dated August 11, 2009. Pittman asserts that Officer "Miller never spoke to the DHO . . . until the day after" the hearing. In support of this assertion, Pittman relies on a handwritten statement in which Officer Miller appears to indicate that he "did speak with DHO" on "Aug. 14, 2009." We agree with the District Court, however, that there is no inherent conflict--and certainly not one that raises due process concerns--between evidence indicating that Officer Miller prepared a written statement dated August 11, 2009, and also spoke with the DHO on August 14, 2009. Pittman has pointed to no other evidence that would convince us that the DHO was biased or impartial.

For the foregoing reasons, we conclude that no substantial question is presented by this appeal. See I.O.P. 10.6. Accordingly, we will summarily affirm the District Court's judgment.