**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2642
_____

ESTATE OF PHILLIP CARL MARTIN, JR.; LINDA MARTIN, Administratrix of
the Estate; LINDA MARTIN, In her own right; DWAYNE MARTIN;
PHILLIP COREY CLAX; BRYHEM ISAAC CLAX,

Appellants

v.

UNITED STATES MARSHALS SERVICE AGENTS; CHRISTOPHER LEONE;
EDWARD FALLON; BARRETT JOHNSON; TIMOTHY O'BRIEN;
JOHN HUNSINGER; KEVIN CUNANE; WILLIAM WILEY; JEROME SCOTT;
CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS; JOHN ELLIS;
JOHN GREER; GARY MCBRIDE; PATRICK DALEY; UNKNOWN JOHN DOE
EMPLOYEES 19-100, In their official and individual capacities; WARREN W. FAULK;
CAMDEN COUNTY PROSECUTOR; CITY OF CAMDEN POLICE DEPARTMENT;
KEITH JAMES; WAYNE MATTHEWS; LT. JAMES PHILLIPS; Capt. H. LEONE; Lt.
ORLANDO CUEVAS; Lt. JOSEPH SAPONARE; and other unknown John Doe Officers
19-100, In their official and individual capacities; GERALD FEIGIN, M.D.;
GLOUCESTER CAMDEN SALEM MEDICAL EXAMINER OFFICE,
In their official and individual capacities
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-10-cv-00066)
District Judge: Hon. Peter G. Sheridan
_____

Argued April 6, 2016

BEFORE: FISHER, COWEN and RENDELL, Circuit Judges

(Filed: May 10, 2016)

Olugbenga O. Abiona, Esq. (Argued)
1433 South 4th Street
1st Floor
Philadelphia, PA 19147

William F. Joseph, Esq.
18 North Lansdowne Avenue
2nd Floor
Lansdowne, PA 19050

      Counsel for Appellants Estate of Phillip
      Carl Martin, Jr., Linda M. Martin,
      Dwayne Martin, Phillip Corey Clax
      and Bryhem Isaac Clax

David V. Bober, Esq. (Argued)
Office of United States Attorney
402 East State Street
Trenton, NJ 08608

      Counsel for Appellees United States Marshals,
      Christopher Leone, Edward Fallon, Barrett Johnson,
      Timothy O'Brien, John Hunsinger, Kevin Cunane,
      William Wiley and Jerome Scott

Howard I. Goldberg, Esq. (Argued)
Office of Camden County Counsel
520 Market Street
14th Floor, Courthouse
Camden, NJ 08101

      Counsel for Appellees Camden County Board of
      Chosen Freeholders, Patrick Daley
      and Gerald Feigin

Barbara E. Riefberg, Esq. (Argued)
Ashley H. Buono, Esq.
Shimberg & Friel
20 Brace Road

Suite 350
Cherry Hill, NJ 08034

Elyse G. Crawford, Esq.
Parker McCay
9000 Midlantic Drive
Suite 300
Mount Laurel, NJ 08054

      Counsel for Appellees John Ellis
      and Gary McBride

Timothy J. Galanaugh, Esq. (Argued)
Office of City Attorney
City of Camden
Suite 419
520 Market Street
P.O. Box 95120
Camden, NJ 08101

      Counsel for Appellees City of Camden Police
      Department, Orlando Cuevas, William Wiley,
      Wayne Matthews, H. Leone, Joseph Saponare,
      Keith James and James Phillips

_____

OPINION[*]
_____

COWEN, <u>Circuit Judge</u>.

Plaintiffs Estate of Phillip Carl Martin, Jr., Linda Martin, Dwayne Martin, Philip

Corey Clax, and Bryhem Isaac Clax appeal from a series of orders entered by the United

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

3

States District Court for the District of New Jersey granting summary judgment in favor of Defendants. We will affirm.

I.

This case arises out of the death of Phillip Carl Martin, Jr. ("Martin"). Martin died shortly after the entry of several deputized United States marshals into the home of his mother (Linda Martin) from a gunshot wound to the head. Linda Martin (acting in her own right and as the administrator of his estate), Dwayne Martin (his brother), and Martin's two sons (Phillip Corey Clax and Bryhem Isaac Clax) (collectively, "Plaintiffs") filed suit against a number of Defendants, alleging various claims under the United States Constitution and New Jersey law. For purposes of this appeal, Defendants can be sorted into the following four categories: (1) the "Marshals," i.e., state or local law enforcement officers deputized as members of the New York/New Jersey Regional Fugitive Task Force (Christopher Leone, Edward Fallon, Barrett Johnson, Timothy O'Brien, Jerome Scott, John Hunsinger, and Kevin Cunane); (2) two investigators working for the Camden County Prosecutor's Office (John Ellis and Gary McBride ("Investigators")); (3) the Camden County Board of Chosen Freeholders, Gerald Feigin, M.D., and Patrick Daley ("Camden County Defendants"); and (4) Wayne Matthews, Joseph Saponare, Keith James, H. Leone, Orlando Cuevas, James Phillips, and the Camden Police Department ("Camden City Defendants"). Plaintiffs urged that the Defendants used excessive force, one of the Marshals shot Martin, and there was a conspiracy to cover this up.

4

The Marshals, Investigators, Camden County Defendants, and Camden City Defendants moved for summary judgment. The District Court heard oral argument on their motions. For the reasons it set forth in a comprehensive and well-reasoned opinion, the District Court granted the respective summary judgment motions except as to the Plaintiffs' claims "regarding the unlawful detention of Linda and Dwayne Martin by the individual Camden City Defendants and by Defendant Gary McBride of the Camden County Prosecutor's Office." (A119-A120.) Because the parties were focused on the excessive force and conspiracy claims and there was some confusion as to "what actions of Defendants', Plaintiffs' various causes of action were directed at," the remaining Defendants were given thirty days to file motions for summary judgment "on the narrow issues that remain before proceeding to trial." (A120.) The District Court subsequently granted the respective summary judgment motions filed by James, McBride, Matthews, and the Camden City Police Department and Phillips.[1]

II.

Plaintiffs have asserted a number of claims, including allegations that the Marshals' entry violated the Fourth Amendment, an excessive force cause of action under the Fourth Amendment, conspiracy allegations under 42 U.S.C. § 1983, various state law claims, a Fourth Amendment cause of action for unlawful arrest, detention, and interrogation, and claims of municipal liability pursuant to Monell v. New York City

---

[1] The Fourth Amendment unlawful seizure claim against William Wiley (a Camden City police officer) went to trial, and the jury returned a verdict in Wiley's favor.

5

Department of Social Services, 436 U.S. 658 (1978).[2] We conclude that the District Court appropriately granted summary judgment in Defendants' favor.

"Plaintiffs Linda Martin and Dwayne Martin assert claims of violation of their 4th Amendment rights against Defendants Kevin Cunane, Christopher Leone, Barry Johnson, John Hunsinger, and Tim O'Brien, who busted into Plaintiff's home at about 6:30 a.m. on January 8, 2008, without a search warrant, without any exigency circumstances and without invitation from or free consent of the Plaintiffs." (Appellants' Brief at 8 (citing A1703-A1705).) Nevertheless, an arrest warrant was issued by a Virginia state court for Martin because he had failed to appear on charges of eluding police, being an habitual offender, and possession of a firearm by a convicted felon. There were also outstanding Virginia arrest warrants for probation violations and assault and battery, and Martin was a suspect in a string of home invasions in Roanoke City, Virginia. In order to enter a home pursuant to an arrest warrant, law enforcement officers must possess "probable cause to believe [the] arrestee resides at and is then present within the residence." United States v. Vasquez-Algarin, No. 15-1941, slip op. at 26 (3d Cir. May 2, 2016). At the time they approached the residence (103 S. 35th Street, Camden, New Jersey), the Marshals had: (1) an outstanding arrest warrant issued by a New Jersey municipal court judge for Martin (admittedly dated July 11, 1995)—listing "103 S. 35th St" as his address (A674); (2)

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's decision to grant summary judgment. See, e.g., Twp. of Piscataway v. Duke Energy, 488 F.3d 203, 208 (3d Cir. 2007). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

6

information received from a deputy marshal in Virginia indicating that Martin had contacted a cooperating witness "on their cell phone from a blocked number" and that, based on a review of the phone records, Martin had called from a cell phone "subscribed to by" Dwayne Martin, who resides at 103 S. 35th Street (A667); and (3) they already visited and searched another location (the residence of Martin's girlfriend)—thereby ruling this address out as a possibility. According to Linda Martin's deposition testimony, the Marshals asked "who was in the house with you," and she said, "My son Dwayne and Phillip." (A1698 (emphasis omitted).) Plaintiffs point to the statement she made on the day of the shooting in which she claimed that the Marshals entered before they knew Martin was there and that, when she was asked who was there after answering the door, she simply said "me and my two sons.'" (A682.) Even if she had only mentioned "my two sons," the Marshals had probable cause to believe that Martin lived in the residence and was present at that time in light of the municipal court arrest warrant, the information received regarding the phone call, and the unsuccessful search of the girlfriend's residence.

Regarding the wrongful death and conspiracy allegations, as the Marshals point out, there was no real evidence indicating that anyone shot Martin other than Martin himself. The District Court aptly explained that "there has been no evidence produced that anyone currently living saw this shot being fired." (A58.) In particular, Dwayne Martin testified at his deposition that he could see the Marshals on the stairs (i.e., their

---

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

7

backs from head to toes), the Marshals were never completely out of his sight, and they always remained on the stairs. He heard a single gunshot. Asked if he saw who fired the gun, Dwayne Martin answered in the negative. The following exchange then occurred:

> **Q     Earlier you said that the Marshals Service were never out of sight.**
> **Did you see any U.S. Marshals Agent fire their gun?**
>
> A.     No.

(A1767.) Even if Dwayne Martin was asked "questions posed with regard to an exhibit showing the interior steps of the house" (Appellants' Reply Brief at 5 (citing A1766)), we do not see how such a line of questioning could have confused him, especially with respect to a direct (and critical) question as to whether he saw the Marshals fire the shot. According to Plaintiffs, "Dwayne's statement to investigators explicitly confirms his belief that officers who climbed the stairs 'shot at' Phillip, and did so he suggests when they 'went in into his' room." (Id. at 4-5 (quoting A691).) Nevertheless, McBride asked him the following question: "They didn't shoot did they?" (A693.) Dwayne Martin's answered in one word—"No." (Id.)

Plaintiffs turn, inter alia, to several expert reports as well as to various inconsistencies in the Defendants' accounts of what happened. However, we cannot find that any of these purported inconstancies were material, especially in light of Dwayne Martin's own eyewitness account. In addition, "Plaintiff's three expert reports do nothing to change the Court's conclusion that Plaintiffs have offered no plausible theory to support their version of the facts and to controvert the well-supported narrative offered by

8

Defendants." (A81.) For instance, the Plaintiffs' pathologist (Dr. Emily Wofford Ward) criticized Dr. Feigin, claiming that "'his photographic documentation of the findings is inadequate for any reasonable interpretation that Phillip Martin's sudden death was a suicide.'" (Appellants' Brief at 15.) As the District Court noted, Dr. Feigin based his findings on the autopsy he had conducted while, "Dr. Ward, on the other hand, does base her opinion on the photograph, and even though she believes the quality is so poor that 'any interpretation' would be 'conjecture,' she opines that Phillip's death 'was not the result of a self-inflicted contact wound.'"[3] (A82-A83 (quoting A1509).)

According to Plaintiffs, there was sufficient evidence for a jury to conclude that the Defendants engaged in a conspiracy to cover up the fact that Martin was shot by one of the Marshals. They indicate that this conspiracy theory should go forward "[i]f the jury concludes that Phillip Martin did not died from self-inflicted gunshot wound, but from the gun shot by one of the U.S. Marshals." (Appellants' Brief at 31 (emphasis omitted).) However, we have already determined that there was no real evidence indicating that a Marshal shot Martin. In any event, a § 1983 conspiracy claim still requires "a '"meeting of the minds."'" Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (quoting

---

[3] We also question whether Martin's shooting could really be compared to a typical "throw down" incident. After all, Defendants claim that Martin shot himself—and not that the Marshals shot him because he purportedly had a gun.

Plaintiffs also assert, inter alia, that the Marshals should have given Martin a chance to surrender before heading upstairs with their guns drawn. As the District Court explained, "officers approaching a fugitive felon with a long string of convictions, outstanding weapons charges, and multiple arrest warrants must be afforded wide latitude in determining how best to effectuate the arrest." (A89.)

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).  A plaintiff must rely on more than his or her own suspicion and speculation to satisfy this requirement.  See, e.g., Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).  We find that there was no evidence that the numerous Defendants implicated in this appeal actually reached an agreement amongst themselves to engage in a cover-up.

The District Court appropriately disposed of Plaintiffs' state law allegations. Pursuant to the New Jersey Tort Claims Act ("NJTCA"), an individual may not sue a public entity or public employee unless he or she submits a notice of claim.  See N.J. Stat. Ann. § 59:8-3.  The notice must include the following:

> a. The name and post office address of the claimant;
>
> b.  The post-office address to which the person presenting the claim desires notices to be sent;
>
> c.  The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
> d.  A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
> e.  The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
>
> f.  The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J. Stat. Ann. § 59:8-4.  Plaintiffs argue that Linda Martin's March 23, 2008 letter met this notice of claim requirement.  However, "[t]he letter does not even provide notice that the Martins intended to seek money damages; rather, it merely complains about the

10

conduct of various law enforcement officers and asks for information about what occurred." (A119.) In turn, the body of the letter did not mention the autopsy performed by Dr. Feigen or the other Camden County Defendants (and, with respect to the Investigators, it merely stated that Linda Martin was asked again and again whether she knew the officers were United States marshals). We accordingly find that this letter failed to satisfy the NJTCA.[4]

With respect to Plaintiffs' argument that, "Defendants Camden City Police Department, Phillips, McBride and Matthews subjected Linda and Dwayne Martin to unlawful arrest, detention and interrogation," the District Court was also correct. (Appellants' Brief at 53 (emphasis omitted).) "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials." (Id. at 56 (citing Marshall v. Barlow's Inc., Inc., 436 U.S. 307, 312 (1978)).) Linda Martin was understandably upset because she had been taken to a police station (in nightclothes and without shoes) after a shooting in her home and learning that her son had died. Nevertheless, law enforcement personnel had to

---

[4] According to their appellate brief, "Plaintiffs have also asserted common law claims of wrongful death and survival actions against these U.S. Marshals" (Appellants' Brief at 7), and Dr. Feigin violated the New Jersey's State Medical Examiner Act (as well as its accompanying regulations), the New Jersey Constitution, and the New Jersey Civil Rights Act. Plaintiffs nevertheless fail to mention the District Court's determination that common law claims "cannot be brought against federal officers; rather, they must be brought pursuant to the Federal Tort Claims Act ('FTCA') and satisfy its exhaustion requirements," which was not done here. (A96-A97 (citing 28 U.S.C. § 2679(b)).) Similarly, it appears undisputed that Plaintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as her (unsuccessful) federal causes of action.

11

secure the scene and begin an investigation into what had happened. See, e.g., Muehler v. Mena, 544 U.S. 93, 102 (2005) ("In summary, the officers' detention of Mena in handcuffs during the execution of the search warrant was reasonable and did not violate the Fourth Amendment. Additionally, the officers' questioning of Mena did not constitute an independent Fourth Amendment violation."). McBride did not play any role in the Martins' detention at the scene or their transportation to the police station. Matthews's involvement (i.e., he participated in the interviews) mirrored those of McBride. During his interview, Dwayne Martin never asked to leave, claimed to be held against his will, or refused to answer questions. While she stated that she wanted to go home, Linda Martin likewise answered the questions put to her. Her interview also lasted less than ten minutes. With respect to Phillips (the purported "Watch Commander" on the scene), there was a lack of evidence from which a reasonable finder of fact could infer that he personally directed—or had knowledge of, and acquiesced in—the detention of Linda and Dwayne Martin. See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, their conduct was reasonable and consistent with their authority, and the District Court properly granted summary judgment.

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell). Custom may be established by evidence of knowledge and acquiescence on the part of

12

municipal policymakers. See, e.g., id. However, the plaintiff must also show that the policy or custom caused his or her injury. See, e.g., id. at 971-72; Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990). Plaintiffs provide no factual or legal support for their contention that, as the "Watch Commander," Phillips "was like the Chief of Police that day, and his actions and conduct on January 8, 2008 were therefore the act of the official government policy." (Appellants' Brief at 62.) Plaintiffs further cite to their March 23, 2008 letter, but this letter was sent months after Martin was shot and his mother and brother were taken to the police station. In the end, Plaintiffs failed to present evidence establishing "'a municipal custom coupled with causation, i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" (A114 (quoting Bielevicz, 915 F.2d at 851).)

III.

For the foregoing reasons, we will affirm the orders of the District Court.