**Eddie GRIFFIN**

v.

**John SPRATT and J. Kevin Kane.**

**Civ. A. No. 90–3286.**

United States District Court,
E.D. Pennsylvania.

June 4, 1991.

Blank, Rome, Comisky & McCauley, Grant S. Palmer, Philadelphia, Pa., for plaintiff.

Sue Ann Unger, Office of Atty. Gen., Philadelphia, Pa., for Spratt and Kane.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

In this action under 42 U.S.C. § 1983, plaintiff Eddie Griffin, a prisoner at the State Correctional Institution, Graterford, claims that the defendants placed him in disciplinary custody for possession and consumption of contraband-intoxicants in violation of due process of law. The parties have filed cross-motions for summary judgment. Appointed counsel filed a supplemental memorandum on behalf of plaintiff and represented him at oral argument.

### I. FACTS

The undisputed facts are as follows:

On March 29, 1990, defendant John Spratt found a bucket and plastic container filled with liquid during a search of Griffin's cell. Based on the odor of the liquid and his observation that it contained particles of fruit, Spratt determined that the liquid was a fermented beverage and ordered Griffin to dump it down the toilet.

Spratt charged Griffin with three misconducts: making a fermented beverage, possession of intoxicants used for fermentation, and possession or consumption of an intoxicating beverage.

A disciplinary hearing was held before defendant Kane at which Griffin contended that the liquid was a fruit juice, not a fermented beverage. Spratt testified that the beverage had fermented and he ordered Griffin to destroy it. Griffin asked Spratt why he did not test the beverage to determine if it had fermented or save a sample of the liquid so it could be analyzed at a later date. Kane ruled that those questions were irrelevant and did not allow Spratt to answer. Kane also ruled irrelevant questions about the prison's policies concerning testing and preservation of evidence and the consent decree governing prison disciplinary procedures.

Kane found Griffin not guilty of making fermented beverages, but guilty of possession of contraband-intoxicants used for fermentation and possession or consumption of intoxicating beverages. Kane imposed a sanction of sixty days in disciplinary custody.

## II. DISCUSSION

Griffin maintains that the disciplinary hearing violated due process in several respects. He claims that Spratt's failure to test or preserve the liquid found in his cell and Kane's decision to limit cross-examination at the hearing deprived him of the right to present evidence in his defense. Griffin also contends that he was not properly advised of his right to appeal in accordance with Administrative Directive 801.VI.A.5 and that the prison did not respond to his post-hearing grievance. Finally, Griffin claims that Spratt's actions violated Administrative Directive 203.II.B.7 and the Equal Protection Clause of the Fourteenth Amendment.

### A. Due Process Claims Under Administrative Directive 801

 Bureau of Corrections Administrative Directive 801 sets forth regulations for the administration of Pennsylvania prisons. That directive creates for prisoners a liberty interest in remaining in the general prison population that is protected by the Due Process Clause of the Fourteenth Amendment. *See Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court established the minimum procedural protections to which a prisoner is entitled in disciplinary hearings: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with the institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Massachusetts Correction Institution v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citing *Wolff*). There is no allegation that plaintiff was deprived of adequate notice, the opportunity to call witnesses, or a written explanation of the reasons for his punishment. Griffin's claims focus on the restriction of his right to present evidence in his defense.

1. *Presentation of Physical Evidence*

a. Liability

In *Young v. Kann*, 926 F.2d 1396 (3d Cir.1991), the Court of Appeals addressed the extent of a prisoner's right to produce and view evidence at a disciplinary hearing. The prisoner was charged with threatening another inmate with bodily harm. The prisoner had given a guard a letter allegedly containing threats against the prisoner's cellmate but the letter was not produced at the disciplinary hearing. The examiner excused the prisoner from the room, heard testimony from the guard concerning the contents of the letter, and informed the prisoner that the letter was irrelevant and the hearing would proceed. Despite the prisoner's protests that he never verbally threatened his cellmate and that the letter contained no threats, he was found guilty and received a sanction of 30 days in disci-

plinary custody and a loss of 40 days statutory good time. *Id.* at 1398.

Relying on *Wolff,* the Court of Appeals stated, "a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities." *Id.* at 1400. In the absence of evidence that the hearing examiner had some valid security reason for denying access to the letter, the court held that the examiner's refusal to order its production violated the prisoner's due process rights. *Id.* at 1402. The court warned that a hearing officer's reliance on a prison employee's oral summary of the evidence against an inmate, without any form of corroborative evidence, is inherently suspect. The court stated:

> A determination of guilt on such a record, with no primary evidence of guilt in the form of witness statements, oral or written, or any form of corroborative evidence, amounts to a determination on the blind acceptance of the prison officer's statement. Such a practice is unacceptable; it does not fulfill *Wolff's* perception of "mutual accommodation between institutional needs and objections" and constitutional requirements of due process.

*Id.* at 1402 (quoting *Helms v. Hewitt,* 655 F.2d 487 (3d Cir.1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Accordingly, the court reversed the dismissal of the prisoner's claim and remanded for further proceedings.

■ Here the facts are somewhat different, but the principles set forth in *Young* govern this case. Griffin maintained that the liquid found in his cell had not fermented. But his ability to mount a defense to the charge of possessing a fermented beverage was severely restricted because the only physical evidence of his guilt was destroyed before it could be tested for fermentation or observed by a third party. The failure to produce this evidence at the disciplinary hearing, in the absence of a valid security concern, violated Griffin's

due process right to "present documentary testimony" and "marshall the facts in his defense." *Wolff,* 418 U.S. at 566, 564, 94 S.Ct. at 2979, 2978. Furthermore, Griffin was found guilty of a misconduct based solely on Spratt's oral testimony that he found a fermented beverage in Griffin's cell. Hearing examiner Kane "rel[ied] exclusively upon a prison employee's oral summary of information implicating the prisoner." *Young v. Kann,* at 1402. That practice is prohibited by *Young.*

■ Defendants contend that the prison's institutional safety interest in disposing of fermented beverages outweighs Griffin's right to produce evidence at his disciplinary hearing. Defendants rely on a Graterford correction officer's statement that saving confiscated fermented beverages (30 to 40 gallons per week) would be unsafe and disruptive to institutional order because closed containers of the beverages have a tendency to explode and must be stored in a secure area. *See* Def. Br. at Ex. E. Defendants have overstated the institutional interest at stake. Due process does not require prison authorities to preserve all the beverage found during a cell search but only a small sample that can be tested by a laboratory or observed by the hearing examiner. Saving a small quantity of the beverage in a test tube, stored in a freezer to halt the fermentation process, may inconvenience prison officials to some degree, but such a procedure ensures that prisoners charged with making fermented beverages (apparently quite a few) receive due process of law in disciplinary hearings.

The principles set forth in *Young v. Kann,* and applied here, are not inconsistent with *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In that case, the police obtained and preserved blood and saliva samples collected from a victim of sexual assault, but failed to test or preserve semen samples found on the victim's clothing. The defendant maintained that he had been denied due process because the timely performance of blood typing tests on the clothing might have completely exonerated him. The court refused to reverse the defendant's conviction,

holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58, 109 S.Ct. at 337.

*Youngblood* is distinguishable. In that case, the defendant was not prejudiced by the police's failure to conduct tests on certain evidence. The police collected all available evidence the night of the crime and provided defendant access to it. None of the saliva, blood, or semen samples collected were used as evidence against defendant. Any prejudice the defendant may have suffered was corrected by the trial court's instruction to the jury that "if they found the State had destroyed or lost evidence, they might 'infer that the true fact is against the State's interest,'" *Id.* at 54, 109 S.Ct. at 335 (quoting the trial transcript). Under these circumstances, the Court determined there was no due process violation absent proof the police acted in bad faith.

In the present case, the failure to preserve or test the liquid found in Griffin's cell severely prejudiced his ability to present a defense on the charge of possessing or consuming an intoxicating beverage. Because the liquid was destroyed, Griffin could not corroborate his claim that the liquid had not fermented. Furthermore, in contrast to the actions of the trial court in *Youngblood,* hearing examiner Kane presumed that the evidence destroyed was incriminating. In view of the prejudice suffered by Griffin, *Youngblood*'s holding that due process does not require the preservation and testing of potentially exculpatory evidence is inapplicable.

Due process requires that evidence critical to establishing a prisoner's guilt be preserved until the disciplinary hearing or at least until the evidence is laboratory tested. A prisoner may not be found guilty of possession of a fermented beverage based solely on the testimony of a prison guard that a fermented beverage was found in his or her cell.

**b. Qualified Immunity**

■ Defendants contend they are entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Harlow* held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Hearing examiners, as well as prison guards, are protected by qualified, not absolute, immunity. *Cleavinger v. Saxner,* 474 U.S. 193, 203–208, 106 S.Ct. 496, 501–504, 88 L.Ed.2d 507 (1985); *Vines v. Howard,* 676 F.Supp. 608, 612 (E.D.Pa.1987).

■ Defendants have a colorable claim to qualified immunity because the court relies heavily on *Young v. Kann,* a case decided after the conduct at issue occurred. However, as counsel for defendants admitted in a letter to the court, *Young* merely applies the principles clearly established in *Wolff v. McDonnell, supra,* and *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), cases decided well before Griffin's disciplinary hearing. As the Court of Appeals stated in *Young,* the due process requirements set forth in that opinion "have been clearly established by *Wolff* and its progeny * * *." 926 F.2d at 1399 n. 7 (3d Cir.1991). In the circumstances, there is no immunity, qualified or otherwise.

**c. Causation**

■ Spratt and Kane are jointly and severally liable for damages suffered by Griffin. Spratt, by intentionally ordering Griffin to destroy the liquid, proximately caused the deprivation of Griffin's due process right to marshall facts in his defense on at least one of the misconduct charges. Kane also caused the deprivation of Griffin's liberty by finding him guilty of possessing or consuming an intoxicating beverage based solely on Spratt's uncorroborated testimony of a prison guard that the beverage in Griffin's cell was fermented.

Summary judgment is granted on this issue in favor of plaintiff.

### 2. *Limitation of Cross–Examination*

■ Griffin also contends that restricting cross-examination of Spratt deprived him of the right to call witnesses and marshall facts in his defense. This argument has been foreclosed by *Wolff v. McDonnell, supra,* and *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In *Wolff,* the Court distinguished between the limited right of inmates to call witnesses in their defense and cross-examination of adverse witnesses. Inmate cross-examination of adverse witnesses "present[s] greater hazards to institutional interests" and could create "havoc inside the prison walls." 418 U.S. at 567, 94 S.Ct. at 2980. Thus, there is no constitutional requirement that prison authorities permit a prisoner to confront and cross-examine adverse witnesses. *Ibid.*

The Court, reaffirming *Wolff* in *Baxter,* held that due process does not require a hearing examiner to provide a written explanation for prohibiting cross-examination of a witness during inmate disciplinary proceedings.

> Mandating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeal to judges, effectively preempts the area that *Wolff* left to the sound discretion of prison officials.

425 U.S. at 322, 96 S.Ct. at 1560.

Summary judgment is granted on this issue in favor of defendants.

### 3. *Notification of Appeal Rights*

■ Griffin maintains that Kane failed to notify him of a right to appeal as required by Administrative Directive 801.-VI.A.5:

> The inmate shall be informed of possible avenues of appeal. The inmate shall indicate on the Misconduct Report that he has been advised of this right to request a formal review and so attest by his signature; if the inmate refuses to sign, two witnesses shall sign to attest that the inmate was advised of the right to

request a formal review. The inmate shall be advised that he has fifteen days to submit a written request for a formal review.

Administrative Directive 801 creates a liberty interest cognizable under the Due Process Clause of the Fourteenth Amendment. However, in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court did "not require that the detailed procedural schema set out in the Directive must be strictly adhered to in order to satisfy due process." *Drayton v. Robinson,* 719 F.2d 1214, 1219 (3d Cir. 1983). Disciplinary hearings "must be conducted in a manner which comports with the minimum *federal* due process standards." *Grandison v. Cuyler,* 774 F.2d 598, 603 (3d.Cir.1985) (emphasis added).

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. * * * So long as this occurs, and the decision maker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

*Hewitt v. Helms,* 459 U.S. at 476, 103 S.Ct. at 874. Under *Hewitt,* there is no due process right to be notified of the procedure for filing an appeal.

Summary judgment is granted on this issue in favor of defendants.

### 4. *Grievance Rights*

■ Plaintiff complains that the prison did not properly respond to his grievance, but neither defendant is responsible for answering prisoner grievances. Even if they were, "an unfavorable decision by prison authorities is not the same as denial of due process." *Abbott v. Owens,* 1988 U.S.Dist. LEXIS 2314 (E.D.Pa.) (Shapiro, J.). Denying Griffin's grievance was not a constitutional violation actionable under 42 U.S.C. § 1983.

Summary judgment is granted on this issue in favor of defendants.

### B. Due Process Claims Under Administrative Directive 203

■ Griffin contends that defendant Spratt is liable for violating Administrative Directive 203.II.B.7, which states "[c]onfiscated property will be placed in a separately secured area until final disposition is made." Spratt has admitted to destroying Griffin's confiscated property prior to disposition of his misconduct hearing. However, there is authority in this circuit that Administrative Directive 203 does not create a liberty interest subject to the limitations of the Due Process Clause. *See Williams v. Kyler*, 680 F.Supp. 172 (M.D.Pa.1986), *aff'd without opinion*, 845 F.2d 1019 (3d Cir.1988). So, even if the court found that Spratt had violated the Directive, he would be entitled to qualified immunity.

### C. Equal Protection

■ Plaintiff maintains that the prison's failure to require laboratory analysis of contraband beverages, as is done with narcotics found in an inmate's cell, is a denial of equal protection.

Action by state officials that does not create a suspect classification or impinge upon a fundamental right satisfies the Equal Protection Clause so long as it is rationally related to a legitimate governmental purpose. *Lyng v. International Union, United Auto, Aerospace, and Agricultural Implement Workers*, 485 U.S. 360, 370, 108 S.Ct. 1184, 1192, 99 L.Ed.2d 380 (1988). Plaintiff does not allege that defendants discriminated on the basis of a suspect classification or violated a fundamental right. There is a rational basis for testing narcotics but not testing contraband beverages. Fermented beverages are more easily identifiable by their smell and appearance. Laboratory tests are less necessary to identify fermented beverages than narcotics. Although prison officials risk violating due process by failing to preserve a sample of a fermented beverage if a misconduct charge is made, the Equal Protection Clause does not require that confiscated beverages be laboratory tested.

### III. CONCLUSION

Partial summary judgment will be granted in favor of plaintiff on his claim that he was denied the right to present evidence at his disciplinary hearing. Because each defendant proximately caused the violation of plaintiff's constitutional rights, liability will be joint and several against defendants Spratt and Kane. Partial summary judgment will be granted in favor of defendants on the remainder of plaintiff's claims.

A hearing on damages will be scheduled. Plaintiff's damages will be calculated by determining his injury for the sixty days spent in administrative custody less the amount of time he would have been sanctioned for possession of contraband fruit juice or other materials.

### MEMORANDUM AND ORDER ON DAMAGES

■ On June 4, 1991, the court granted partial summary judgment in favor of plaintiff on his claim under 42 U.S.C. § 1983 and scheduled a hearing on damages. Plaintiff had been found guilty of "possession of contraband/intoxicants; materials used for fermentation" and "possession or consumption of intoxicating beverages" and sanctioned with 60 days in disciplinary custody. The court held that plaintiff had been denied due process in his disciplinary hearing on the charge of possession of an intoxicating beverage because prison officials failed to save or laboratory test a sample of the beverage found in plaintiff's cell to determine if it, in fact, had fermented. The court determined that plaintiff would be entitled to damages for the amount of time spent in disciplinary custody for both misconducts less the amount of time he would have been sanctioned for the single misconduct of "possessing contraband/intoxicants; materials used for fermentation."

■ Plaintiff challenges this method for calculating damages because he believes the constitutional principles set forth in the court's previous opinion require reversal of both misconduct charges. The court disagrees. An inmate may be found guilty of possessing "contraband/intoxi-

cants; materials used for fermentation" without proof that he or she possessed a fermented beverage. The existence of two separate charges—"possession of intoxicating beverages" and "possession of contraband/intoxicants; materials used for fermentation" suggests that the second charge is intended to punish inmates for storing in their cells items that can be used for fermentation. While the terminology of the "materials used for fermentation" misconduct could have been drafted more artfully, the court believes that it is sufficiently clear to notify inmates that possession of articles used for fermentation will be punished as a Class I misconduct.

█ The hearing examiner's determination that plaintiff was guilty of possessing materials used for fermentation was justified. There were plastic jugs and a sealed milk bag containing fruit juice found in plaintiff's cell. Hearing Examiner Kane testified that those items are commonly used for making fermented beverages. The court's constitutional inquiry is satisfied because there is "some evidence that supports the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

Kane testified that plaintiff would have been sanctioned from 30–45 days in disciplinary custody if he had been found guilty only of possessing materials used for fermentation. Although the court does not accept this testimony in its entirety, based on a review of plaintiff's disciplinary record, *see* Def. Motion for Summary Judgment at Ex. A–3, it is likely that plaintiff would have received a sanction of at least 30 days in disciplinary custody for possessing the milk bag, fruit juice, and plastic jugs. Plaintiff served only thirty days of the original sixty-day sanction before release by the prison review board. Therefore, he spent no additional days in disciplinary custody as a result of defendants' unconstitutional actions. Consequently, the court will not award any compensatory damages.

However, plaintiff is entitled to an award of $1.00 in nominal damages because his constitutional rights were violated. *See Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978).