**UNITED STATES of America**

v.

**Jonathan BOYD and Robert Keith Powell,**

**Jonathan L. Boyd, Appellant.**

**No. 91–3597.**

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1992.

Decided April 13, 1992.

Thomas S. White, Federal Public Defender, Karen Sirianni Gerlach (Argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

Paul J. Brysh, Constance M. Bowden (Argued), Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before GREENBERG and COWEN, Circuit Judges, and GREEN, District Judge.*

---

* Honorable Clifford Scott Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

### OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal involves three issues: 1) were the defendant's due process rights violated when an independent lab destroyed urine samples which indicated his cocaine use; 2) can a higher sentence be imposed when probation is revoked than the sentence which could have been imposed originally; and 3) was the district court required to give notice of an upward departure prior to the resentencing hearing. We reject the due process argument but find that the district court erred in imposing a twelve month prison sentence on the defendant, thus we will vacate and remand for resentencing.

## I.

Jonathan L. Boyd pled guilty on November 19, 1990 to one count of conspiracy to commit an offense against the United States by distribution of anabolic steroids in violation of 18 U.S.C. § 371 (1988). Under the Sentencing Guidelines, Boyd faced a possible zero to six month prison sentence.[1] Instead, Boyd was sentenced to three years probation, of which the first sixty days were to be served in home confinement. During this sixty day period, Boyd was subject to regular urinalysis, since a condition of his probation was that he not use drugs. A urine sample taken from Boyd on April 19, 1991 tested positive for cocaine metabolite. The sample was retested, and again the results indicated drug use. By standard procedure, the positive urine specimen was to be maintained by a private laboratory for two months and then destroyed on June 28, 1991.

On June 27, 1991, the district court scheduled a probation violation hearing for August 21, 1991. On June 28, the date of the scheduled destruction, a federal defender was appointed to represent Boyd. When Boyd's attorney filed a motion on August 9 to have a defense expert examine the urine

---

1. The sentencing range was derived from a total offense level of four within criminal history category I. U.S.S.G. Ch. 5, Pt. A.

sample, he was informed that the sample already had been destroyed. At the probation violation hearing, the district court revoked probation and resentenced Boyd to twelve months imprisonment, although Boyd could only have been sentenced originally to a maximum of six months. Boyd appeals to this court. We have jurisdiction under 28 U.S.C. § 1291 (1988).

## II.

## A.

Boyd's first ground for appeal concerns the routine destruction of his urine sample which had tested positive for drug use. The Supreme Court has examined the destruction of evidence by the police in two recent cases: *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) and *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

In *Trombetta,* the defendants in a drunk driving case sought to suppress the results of breath tests because the tests had not been preserved by the state. The Court rejected the defendants' arguments on three grounds. First, the police were acting in "good faith and in accord with their normal practice" when they destroyed the tests. *Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2533 (citing *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961)). Second, there was only a slim chance that the breath samples, had they been preserved, would have exculpated the defendants. *Id.* 467 U.S. at 489, 104 S.Ct. at 2534. Third, even if the evidence had some exculpatory value, the defendants had "alternative means of demonstrating their innocence." *Id.* at 490, 104 S.Ct. at 2534. For example, the defendants could have challenged the reliability of breath testing in general.

In *Youngblood,* the defendant was charged with molesting and sodomizing a ten-year-old boy. The police failed to refrigerate the boy's clothing, thus preventing later testing on the semen found on the clothing. Youngblood, whose defense was that the boy had misidentified him, argued

that he would have been exonerated had such testing been possible. The Court held that there was no denial of due process since the defendant did not show bad faith on the part of the police.

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

*Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337. The Court concluded that the police conduct "can at worst be described as negligent." *Id.*

*Youngblood* was most recently applied by this court in *United States v. Stevens,* 935 F.2d 1380 (3d Cir.1991), which involved saliva tests in a sexual assault case. Because insufficient saliva had been collected from the victim to conduct a DNA test, the government used all of the saliva to conduct a serological test. According to the defendant, this constituted a bad-faith destruction of the saliva, since a DNA test would have exonerated him. Although the conviction was reversed on other grounds, we found no due process violation by reason of the government's decision to use the saliva for a serological test.

> Nothing in the record suggests that the government suspected that the saliva/semen sample on slide #3 could form a basis for exonerating Stevens. The FBI agents knew nothing about what slide #3 might reveal; they knew only that the slide contained too little semen to permit DNA testing. They therefore elected to pursue another type of forensic test in an effort to discover the assailant's blood type. This test either might have inculpated or exculpated Stevens; no one knew.... [T]he performance of this alternative test bespoke of no bad faith.

*Id.* at 1388.

■ In the case before this court, Boyd contends that the destruction of his urine

sample constituted a violation of his due process rights. At first glance, this argument appears to have some merit. In the eight months between his indictment in August 1990 and his positive drug test in April 1991, Boyd provided some fifty urine samples.[2] Only one of those samples tested positive for drug use. Because that sample was destroyed pursuant to a standard procedure in which samples are only kept for two months, we do not believe there was bad faith on the part of the government. It is significant that the standard procedure was established not by the government but by the independent laboratory which tested the sample. Boyd also had other means by which to challenge the evidence. For example, he could have challenged the reliability of the test, which the government conceded was inaccurate four percent of the time. Although it is unfortunate that Boyd's expert never had the opportunity to examine the sample, this does not rise to the magnitude of a constitutional violation under *Trombetta* and *Youngblood.*

### B.

Boyd's second ground for appeal is that the district court erred in resentencing him to twelve months imprisonment, since he could have been sentenced originally to only zero to six months for conspiracy to distribute anabolic steroids. The confusion in this case, and other cases involving probation revocation, is determining which statute or guideline should be used to determine the appropriate sentence. There are at least three different standards which could apply in this case.

First, 18 U.S.C. § 3565(a)(2) (1988) states that violation of a condition of probation may lead to the imposition of "any other sentence that was available ... *at the time of the initial sentencing.*" (emphasis added). *See also* U.S.S.G. Ch. 7, Pt. A, 2(a) (restating 18 U.S.C. § 3565). Second, Congress amended section 3565 in 1988 to include the following proviso relating to drug possession: "Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance ... the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence." 18 U.S.C. § 3565(a) (1988).[3] Finally, the Sentencing Guidelines establish a separate "revocation table" for determining the appropriate resentencing range when probation is revoked. U.S.S.G. § 7B1.4(a), p.s.

In the case before us, the district court relied on the third standard, the Guidelines' revocation table, which established a range of three to nine months imprisonment for a Grade C violation within criminal history category I. *Id.* However, the district court noted that "the defendant's attitude toward his offense, his subsequent state conviction and the violation of the terms of his probation do warrant upward departure from the guidelines," and thus resentenced Boyd to twelve months in prison. App. at 85–86. To determine the appropriate sentence in this case, we must resolve several related issues. First, we must determine the meaning of the phrase "any other sentence that was available ... at the time of the initial sentencing" in section 3565(a)(2). Then we must determine whether the Guidelines' revocation table, which establishes a separate schedule of sentences, conflicts with the requirements of section 3565(a)(2).

■ Courts of appeals which have examined section 3565(a)(2) have been unani-

---

**2.** The overwhelming majority of the samples was provided between the time of Boyd's indictment in August 1990 and his original sentencing in February 1991. Only two samples were taken from Boyd while he was on probation, one of which tested positive for cocaine use.

**3.** The 1988 drug amendment appeared to play no role in Boyd's sentencing. The district court found that the probation violation was a Grade C violation rather than a Grade A violation

involving a controlled substance offense. U.S.S.G. § 7B1.1, p.s. Moreover, the government acknowledged in its brief that it did not argue at the time of sentencing that the 1988 drug amendment was applicable to Boyd. On remand, any application of the 1988 drug amendment would be guided by our opinion in *United States v. Gordon*, 961 F.2d 426 (3d Cir. 1992), filed contemporaneously with this opinion.

mous in their interpretations. In *United States v. Smith*, 907 F.2d 133 (11th Cir. 1990), the Court of Appeals for the Eleventh Circuit held that the sentence imposed upon revocation of probation cannot exceed the sentencing range available at the time of the initial sentencing for the underlying crime. This holding has been followed by the Courts of Appeals for the Fourth, Eighth and Ninth Circuits. *United States v. Alli*, 929 F.2d 995 (4th Cir.1991); *United States v. White*, 925 F.2d 284 (9th Cir. 1991); *United States v. Von Washington*, 915 F.2d 390 (8th Cir.1990) (per curiam). It is noteworthy that *Smith, Alli,* and *Von Washington* all involved revocations of probation following positive drug tests.

In *Smith,* the Eleventh Circuit indicated that conduct during probation can be used for only three purposes. First, the conduct can be used as a basis for departure only if the facts supporting the conduct were presented to the court at the initial sentencing. *Smith,* 907 F.2d at 135. In other words, the court cannot make new factual findings to support a departure, but can only reconsider its original decision not to depart. Second, the post-sentencing conduct can be considered in deciding whether to revoke or continue probation, either on the same or different terms. *Id.* at 136. Third, the conduct can be used to determine where to resentence within the original sentencing range, *id.,* which in the case before us was zero to six months.

The government does not attempt to distinguish *Smith* nor does it contend that the district court evaluated the post-sentencing conduct of cocaine use in one of the three permissible ways described in *Smith.* Instead, the government argues that *Smith* and its progeny are erroneous. The government argues that since Boyd's cocaine use was not a factor which the district court could have considered at the initial sentencing in that it had not yet occurred, the court was free to impose a higher sentence because of the cocaine use at the probation violation hearing. We find this argument to be flawed. Had Boyd's

offense during probation been so serious as to merit more severe punishment, the government could have charged him with that offense.[4] Instead, the government would have the sentencing court consider the cocaine use in departing from the original sentencing range, even though Boyd was never charged and convicted for this misconduct.

The plain wording of section 3565(a)(2) indicates that a court resentencing a defendant for a probation violation must go back in time to the initial sentencing. Only the offense before the court at that original hearing and the sentencing range available for that offense are relevant. At oral argument, the government contended that the district court had discretion to revoke probation and impose a sentence up to the five year statutory maximum allowed under 18 U.S.C. § 371 (1988). With the enactment of the Sentencing Guidelines, however, a sentencing court rarely refers to the statutory maximum. Moreover, had Congress intended such a result, it would have drafted section 3565(a)(2) to allow a court to revoke probation and impose *any* sentence as long as it does not exceed the statutory maximum for the underlying offense, which in this case was five years. The actual wording of section 3565(a) is far more limited in scope. Therefore, we believe the Eleventh Circuit's interpretation of section 3565(a)(2) in *Smith* is correct and adopt it as the law of this circuit.

■ Our analysis does not end here, however, since the district court relied not on section 3565(a)(2) in resentencing Boyd, but instead on the probation revocation table contained in section 7B1.4(a) of the Sentencing Guidelines. There is a clear conflict between the two standards: Section 3565(a)(2) allows Boyd to be resentenced to zero to six months imprisonment, while the probation revocation table allows him to be resentenced to three to nine months. The cases interpreting section 3565(a)(2) (*Alli, White, Von Washington,* and *Smith*) all

---

**4.** We note that under *United States v. Blackston,* 940 F.2d 877 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991), drug use as indicated by urinalysis is merely circumstantial evidence of drug possession. *Id.* at 886.

dealt with resentencing before the probation revocation table went into effect on November 1, 1990. Thus, we must decide whether the analysis in these cases is still applicable after the promulgation of the revocation table.

■ The Court of Appeals for the Ninth Circuit recently addressed the conflict between the probation revocation table and section 3565(a)(2), and concluded that "[t]o the extent that the Guidelines conflict with the statute, we find them invalid." *United States v. Dixon,* 952 F.2d 260 (9th Cir. 1991). We agree with the Ninth Circuit but add a slight modification. We do not find the probation revocation table to be invalid *per se,* but where the revocation table conflicts with the statute (section 3565(a)(2)), the two standards must be reconciled with the statute always prevailing. *See United States v. Donley,* 878 F.2d 735, 741 (3d Cir.1989) ("[T]he underlying statute shall control in case of conflict with the Sentencing Guidelines."), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990); U.S.S.G. §§ 5G1.1, 7B1.4(b), p.s. (when Guidelines establish sentence either above statutory maximum or below statutory minimum, statutory maximum or minimum controls). In this case, the statute would not allow Boyd to be resentenced to more than six months (compared to a maximum of nine months under the revocation table), while the table would not allow him to be resentenced to less than three months (compared to a statutory minimum of zero months). Therefore, the appropriate resentencing range in this case following the revocation of probation was three to six months, representing a revocation table minimum of three months and a statutory maximum of six months.[5]

Our conclusion that section 3565(a)(2) must prevail where it conflicts with the probation revocation table is borne out by the language authorizing the Sentencing Commission to promulgate applicable guidelines. With regard to the revocation of probation, the Commission is authorized to promulgate "guidelines or general policy statements regarding the appropriate use of the provisions for revocation of probation set forth in section 3565 of title 18." 28 U.S.C. § 994(a)(2)(F) (1988). That the policy statement containing the revocation table must be consistent with, rather than an alternative to, 18 U.S.C. § 3565 is obvious from this authorizing language. *Dixon,* 952 F.2d at 261.

In promulgating the rules governing the revocation of probation, the Sentencing Commission specifically considered two different approaches to resentencing: 1) punishing the defendant for "failure to follow the court-imposed conditions of probation or supervised release as a 'breach of trust'"; or 2) punishing the defendant for the "particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct." U.S.S.G. Ch. 7, Pt. A, 3(b). The Commission chose the first approach, deciding that "imposition of an appropriate punishment for any new criminal conduct would not be the primary goal of a revocation sentence." *Id.* To allow the probation revocation table to supersede section 3565(a)(2) would be contrary to the notion that the Guidelines do not impose additional punishment for the misconduct during probation.

The fact that the probation revocation table is contained in a policy statement is important, but not necessarily dispositive. We have stated on other occasions that policy statements are less authoritative than guidelines. *See United States v. Blackston,* 940 F.2d 877, 893 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991) ("Whereas guidelines are binding on the courts, policy statements are merely advisory."); *cf. United States v. Lee,* 957 F.2d 770, (10th Cir.1992) (revocation table only advisory, although it must be considered by sentencing court). However, even if the revocation table were contained in a guideline that otherwise would be binding on this court, we still

---

**5.** The Ninth Circuit did not attempt to reconcile the statute and the revocation table in *Dixon,* since there was no overlap between the two standards. The statute allowed a sentence of four to ten months, while the table allowed a sentence of twelve to eighteen months. *Dixon,* 952 F.2d at 260–61.

would be constrained to hold that section 3565(a)(2) prevails in the event of a conflict.

### C.

Boyd's final ground for appeal is that the district court should have given him notice of an upward departure. Since we have found that the district court imposed an impermissible sentence by deviating beyond section 3565(a)(2), we need not reach the issue of notice. We note, however, that the Supreme Court's decision in *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), would apply in this case had a departure been permissible.

### III.

Because the district court imposed a sentence which exceeded the sentence Boyd could have received at his initial sentencing, we will vacate and remand for resentencing consistent with this opinion.