Eddie **GRIFFIN**

v.

John **SPRATT** and J. Kevin **Kane, Appellants.**

No. 91–1604.

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1992.

Decided July 7, 1992.

---

Ernest D. Preate, Jr., Atty. Gen., Sue Ann Unger (argued), Deputy Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Philadelphia, Pa., for appellants.

Grant S. Palmer (argued), George J. Kruger, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee.

Before: STAPLETON, SCIRICA and ALITO, Circuit Judges.

### OPINION OF THE COURT

ALITO, Circuit Judge:

Two state corrections officials appeal from a judgment entered against them under 42 U.S.C. § 1983 for allegedly violating a prisoner's due process rights in connection with a prison disciplinary proceeding. One of the offenses for which the prisoner was found guilty at the disciplinary proceeding was possession or consumption of intoxicating beverages. The district court held that the prisoner's due process rights were violated because the beverages found in his cell were not preserved until the time of the hearing but were instead discarded in accordance with standard prison practice. 768 F.Supp. 153. Applying *Arizona*

*v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), we hold that the corrections officers did not violate due process because there was no evidence that they discarded the beverages in bad faith. We therefore reverse.

### I.

Eddie Griffin is a prisoner at the Pennsylvania State Correctional Institution at Graterford. In March 1990, John Spratt and another Graterford corrections officer searched the cell in which Griffin was housed alone. The officers found a quantity of beverages that they believed were fermented. Spratt ordered Griffin to flush the liquid down the toilet, and Griffin complied.

Spratt then filed a misconduct report charging Griffin with (1) "[p]ossession of contraband—intoxicants, materials used for fermentation," (2) "[m]aking fermented beverages," and (3) "[p]ossession for consumption of intoxicating beverages." In the report, Spratt stated that the officers had discovered approximately 15 gallons of beverages in Griffin's cell. Spratt stated that ten gallons of fermented beverage had been found in a mop bucket behind Griffin's cell cabinet and that approximately five gallons of fermented beverage had been discovered in a plastic milk bag behind his bunk. In addition, the report stated that numerous plastic one-gallon containers with residue from fermented beverage inside had been found in the cell.

In a subsequently filed declaration, Spratt stated that he had received on-the-job training for the purpose of identifying fermented beverages. Spratt also declared that he had been able to identify the beverages in question as fermented based on his "experience as a guard responsible for multiple cell searches." He stated that the liquid in the bucket had been "foaming at the top" and that he had "recognized a strong stench of rotten fruit and smell of alcohol." He further declared that he had been able to see "particles of fruit" in the liquid in the plastic bag and that the bag was "bloated, bellowed out, and ... felt warm." Spratt's declaration also explained that each week his search team at Graterford found about 40 to 60 gallons of contraband fermented beverage prepared by prisoners using fruit taken back to their cells after meals. Spratt stated that when he found contraband that he could identify as a fermented beverage he always asked the inmate to flush the beverage down the toilet.

A few days after the search, a disciplinary hearing was conducted by another corrections officer, J. Kevin Kane. The only two witnesses at the hearing were Griffin and Spratt. Griffin claimed that the beverages had not fermented at the time of confiscation, while Spratt testified that he believed, based on his experience and observations, that they had fermented. Griffin asked Spratt why he had not tested the beverages to determine if they had fermented and why he had not saved a sample of the beverages for analysis at a later date. Kane, however, ruled that those questions were irrelevant.

Kane found Griffin not guilty of making fermented beverages, but guilty of the other two violations—possession of contraband and possession or consumption of intoxicating beverages. Kane imposed a sanction of 60 days in disciplinary custody.

Griffin then commenced this action under 42 U.S.C. § 1983, alleging, among other things, that Spratt and Kane violated his due process rights because the beverages found in his cell had not been tested or preserved until the time of the disciplinary hearing. The district court granted partial summary judgment for Griffin, holding that the destruction of the beverages violated his due process rights. The district court relied primarily on *Young v. Kann,* 926 F.2d 1396 (3d Cir.1991), which held that a prisoner's due process rights were violated at a disciplinary hearing because the hearing examiner refused to order production of an allegedly threatening letter that was written by the prisoner and seized by prison officials and that formed part of the basis for the disciplinary charge against the prisoner. The district court recognized (App. 153) that the facts in the present case are "somewhat different" from those in

*Young*, but the district court stated that "the principles set forth in *Young* govern this case." The district court wrote (*id.*):

> [Griffin's] ability to mount a defense to the charge of possessing a fermented beverage was severely restricted because the only physical evidence of his guilt was destroyed before it could be tested for fermentation or observed by a third party. The failure to produce this evidence at the disciplinary hearing, in the absence of a valid security concern, violated Griffin's due process right to "present documentary evidence," and "marshal the facts in his defense." *Wolff* [*v. McDonnell*, 418 U.S. 539, 566, 564, [94 S.Ct. 2963, 2979–80, 2978, 41 L.Ed.2d 935] (1974)].

The district court also concluded (*id.*, quoting *Young*, 926 F.2d at 1402) that hearing examiner Kane violated Griffin's due process rights by relying exclusively " 'on a prison employee's oral summary of information implicating the prisoner.' " *viz*, Spratt's opinion that the beverages were fermented. The district court wrote (*id.*): "That practice is prohibited by *Young*."

The district court subsequently held a hearing on damages and issued a written opinion. The court reasoned that one of the misconduct charges for which Griffin was found guilty—possession of contraband—did not require proof that the beverages had actually fermented. The court therefore concluded (App. 164) that Griffin was entitled to damages "for the amount of time spent in disciplinary custody for both misconducts less the amount of time he would have been sanctioned for the single misconduct of ... possessing contraband." Finding that Griffin would have probably received a sanction of at least 30 days in disciplinary custody for the latter offense and that he had served only 30 days of the original 60–day sanction before release by the prisoner review board, the court concluded (*id.* at 163–64) that Griffin "spent no additional days in disciplinary custody as a result of defendants' unconstitutional actions." The court therefore awarded no compensatory damages but awarded $1 in nominal damages. Spratt and Kane appealed.

## II.

Although the damages at issue in this case are nominal, the constitutional question presented may have important practical consequences with respect to the administration of corrections facilities within this circuit. When prison officials find what is believed to be a fermented beverage in a prisoner's cell—and according to Spratt's declaration in the present case, such beverages are found in great volume—must the officials preserve all or part of the beverage until the time of the prisoner's disciplinary hearing? Or may they follow the less formal practice, apparently employed at Graterford, i.e., permitting corrections officers to destroy seized beverages and later offer their opinions at disciplinary proceedings with respect to whether particular beverages were or were not fermented based on the beverages' odor, appearance, and other physical characteristics observed by the officers?

■■ We begin by recognizing that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975. Instead, due process prohibits the deprivation of a prisoner's liberty interest at a disciplinary hearing unless the prisoner is given the following three rights: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). In addition, a disciplinary decision implicating a prisoner's liberty interest must be supported by at least "some evidence." *Id.* at 455, 105 S.Ct. at 2774. In this case, the district court held that two of these rights were violated—the right to present evidence in the prisoner's defense and the right not to be found

guilty of a disciplinary infraction without the requisite quantum of evidence. We will address each of these rights in turn.

A. Griffin maintains, and the district court held, that the corrections officials violated Griffin's right to present physical evidence in his defense. We disagree.

As noted, the district court relied heavily on our decision in *Young v. Kann, supra,* but we find this reliance misplaced. *Young* concerned a prisoner's right to production of existing documentary evidence; the opinion in *Young* said nothing whatsoever about a prisoner's right to have physical evidence preserved. The present case, by contrast, did not involve a request for the production of existing evidence; instead, this case concerns the preservation of evidence. Thus, the question presented here is quite different from that in *Young.*[1]

The Supreme Court and this court have decided cases dealing directly with the obligation of the prosecution or police to preserve physical evidence that might prove helpful to the defense in a criminal prosecution or probation revocation proceeding. *Arizona v. Youngblood, supra; United States v. Boyd,* 961 F.2d 434 (3d Cir.1992); *United States v. Stevens,* 935 F.2d 1380 (3d Cir.1991). *See also California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). We believe that these precedents, not *Young,* must guide our decision here. To be sure, these cases did not address the rights of a prisoner charged with a disciplinary infraction. But since the constitutional safeguards applicable in a criminal prosecution are far more extensive than those in a prison disciplinary proceeding, it follows a *fortiori* that, if Griffin would not have been constitutionally entitled to the preservation of the beverages at issue here

had he been charged with a criminal offense, he was not constitutionally entitled to their preservation when charged with prison disciplinary infractions. We thus consider Griffin's rights under these precedents.

In *Arizona v. Youngblood, supra,* the defendant was convicted for molesting and sodomizing a 10–year–old–boy. Semen samples were collected and tested by the police, but the tests did not yield any information about the identity of the assailant. The defendant contended that the prosecution violated his due process rights by failing to perform timely tests on the samples and by failing to preserve the samples. The Supreme Court rejected this argument, holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potential useful evidence does not constitute a denial of due process of law" (488 U.S. at 58, 109 S.Ct. at 337). The Court explained (*id.*):

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

The Supreme Court added (*id.* at 51 n. *, 109 S.Ct. at 333 n. *) that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."

---

1. The district court apparently felt that the principle underlying *Young* was not simply the right to production of existing evidence but a broader right to have potentially exculpatory evidence both preserved and produced. There is, however, no express support in *Young* itself for this broad interpretation. Moreover, this interpretation is irreconcilable with *Arizona v. Youngblood* and related cases. Under the Due Process Clauses and the Compulsory Process Clause of the Sixth Amendment, a criminal defendant has broad rights concerning the production of evidence. *See, e.g., Taylor v. Illinois,* 484 U.S. 400, 407–09, 108 S.Ct. 646, 652–53, 98 L.Ed.2d 798 (1988); *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Nevertheless, in *Arizona v. Youngblood, supra,* the Supreme Court held that a criminal defendant does not have the right under due process to have all potentially exculpatory evidence preserved for trial or for testing. Thus, the right to require the production of existing evidence cannot subsume the right to the preservation of potentially exculpatory evidence, as the district court apparently reasoned.

This court applied *Youngblood* in *United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991), another prosecution for sexual assault. In that case, a very small semen sample was obtained by the FBI. The FBI concluded that the sample was too small for DNA testing and therefore performed a serological test that resulted in the destruction of the sample. The defendant contended that the destruction of this sample violated his due process rights, but we disagreed, finding no evidence that the FBI acted in bad faith. "Nothing in the record," we wrote (*id.* at 1388), "suggests that the government suspected that the ... sample on [the] slide ... could form a basis for exonerating [the defendant]."

We again applied *Youngblood* in *United States v. Boyd, supra.* In that case, Boyd's probation was revoked because a urine test performed by a private laboratory indicated the presence of a cocaine metabolite. In accordance with its standard procedure, the laboratory maintained the urine specimen for two months but destroyed it before it could be tested by a defense expert and before the probation revocation proceeding. We rejected Boyd's argument that his due process rights had been violated, stating (961 F.2d at 437):

> Because [the] sample was destroyed pursuant to a standard procedure in which samples are only kept for two months, we do not believe there was bad faith on the part of the government.

We added (*id.*): "Although it is unfortunate that Boyd's expert never had the opportunity to examine the sample, this does not rise to the magnitude of a constitutional violation."

█ Under these precedents, it is clear that the failure to preserve the beverages found in Griffin's cell would not have violated due process even if Griffin had been charged with a criminal offense rather than a prison disciplinary violation. The district court did not find that the corrections officers ordered Griffin to discard the beverages in order to prevent their possible use for exculpatory purposes at the disciplinary hearing. Moreover, there is no evidence in the summary judgment record that would

support such a finding. Rather, the uncontradicted evidence indicates that it was standard procedure to discard all such beverages, and the officers provided a seemingly legitimate justification for this policy. They explained that preserving the large quantity of beverages regularly seized at the institution would be unsafe and disruptive to institutional order because closed containers of fermenting beverages can explode and would have to be stored in a secure area.

█ The district court attempted to distinguish *Arizona v. Youngblood, supra,* on several grounds, but we do not believe that these distinctions are valid. The district court wrote that the defendant in *Youngblood* unlike Griffin, "was not prejudiced by the police's failure to conduct tests." The Supreme Court's decision in *Youngblood*, however, was not based on lack of prejudice. On the contrary, the Court acknowledged (488 U.S. at 57, 109 S.Ct. at 337) that the tests at issue there "might have exonerated the defendant."

The district court also wrote that the samples in *Youngblood* were not "used as evidence against the defendant." Nothing in the Supreme Court's opinion, however, suggests that its decision was based in any part on the fact that no prosecution testimony regarding the samples was introduced. Furthermore, in *Boyd*, we applied *Youngblood* and upheld a probation revocation decision that was based on the results of a drug test of a urine sample that was destroyed in accordance with standard practice before the defense had an opportunity to conduct its own tests. Therefore, *Boyd* refutes the argument that *Youngblood* is limited to situations in which no evidence stemming from the destroyed evidence is utilized.

Finally, the district court tried to distinguish *Youngblood* on the ground that the trial court in that case instructed the jury that "if they found the State had destroyed or lost evidence, they might 'infer that the true fact is against the State's interest.'" *See* 488 U.S. at 54, 109 S.Ct. at 335 (quoting trial transcript). Again, however, there is nothing in the opinion in *Youngblood*

that suggests that the decision rested in any way on this instruction. Nor is there any indication that such an instruction was given in *Stevens,* where we found (935 F.2d at 1388) no due process violation despite the destruction of evidence that "might have inculpated or exculpated [the defendant]." Nor is there any indication in *Boyd* that the district court applied any similar rule in finding that there had been a probation violation. In short, none of the factors on which the district court relied provides a valid basis for distinguishing *Youngblood.* We therefore conclude that Griffin had no constitutional right to have the beverages found in his cell preserved until the disciplinary hearing.

▆▆▆ B. We likewise hold that the district court erred in concluding, based on *Young v. Kann,* that the hearing examiner violated Griffin's constitutional rights by basing his decision regarding the nature of the beverages exclusively on Spratt's testimony that he believed they had fermented. Spratt's testimony would have been admissible even in a court proceeding governed by the Federal Rules of Evidence (*see* Fed. R.Evid. 701, 702). Moreover, evidence of this nature—*e.g.,* non-scientific evidence indicating that certain substances were illegal drugs—is sufficient to prove guilt beyond a reasonable doubt in a criminal trial.[2] Accordingly, there can be no question that it is constitutional to rely on such testimony as the basis for a decision in a prison disciplinary proceeding, where hearsay is allowed (*Wolff v. McDonnell,* 418 U.S. at 567–68, 94 S.Ct. at 2980) and a violation must simply be supported by "some evidence" (*Superintendent v. Hill, supra* ).

▆▆▆ Nothing in *Young v. Kann* undermines this conclusion. In that case, as previously noted, we held that the hearing officer had violated the prisoner's rights by refusing to order production of the allegedly threatening letter that was used against him. In the passage from *Young* on which the district court relied, we added (*id.* at 1402) that the hearing officer's "alleged sole reliance upon the oral summary of the contents of the letter provided, outside of Young's presence, by the guard at the hearing may itself be a due process violation." We interpret this statement to apply only where production of existing evidence is improperly withheld and hearsay is offered in its place. Because the situation here was very different, the statement has no application.

### III.

We therefore reverse the judgment of the district court and remand for entry of summary judgment in favor of the defendants.

---

2. The prosecution "may establish the identity of a drug through cumulative circumstantial evidence. So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable." *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir.1988) (citations omitted). "Identification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt." *United States v. Harrell,* 737 F.2d 971, 978–79 (11th Cir.1984). *See also United States v. Sanchez Defundora,* 893 F.2d 1173, 1175 (10th Cir.), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2190, 109 L.Ed.2d 518 (1990); *United States v. Walters,* 904 F.2d 765, 770 (1st Cir.1990); *United States v. Osgood,* 794 F.2d 1087, 1095 (5th Cir. 1986); *United States v. James,* 494 F.2d 1007, 1026 n. 6 (D.C.Cir.1974); *United States v. Nuccio,* 373 F.2d 168, 174 n. 4 (2d Cir.), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967).