**UNITED STATES of America, Plaintiff,**

**v.**

**Clarence McNICKLES, Defendant.**

**Criminal Action No. 89–100–1–JJF.**

United States District Court,
D. Delaware.

Nov. 27, 1996.

Gregory M. Sleet, United States Attorney, Carolyn T. Greene, Assistant United States Attorney, for Plaintiff.

Charlene D. Davis, Bayard, Handelman & Murdock, P.A., Wilmington, Delaware, for Defendant.

## *OPINION*

FARNAN, Chief Judge.

Presently before the Court are two motions filed on behalf of Clarence McNickles, a Federal Probationer. The first motion seeks dismissal of the Petition on Probation and Supervised Release (the "Revocation Petition"). (D.I. 106.) In the alternative, the second motion seeks the following relief: (i) the opportunity to retest McNickles' urinalysis specimen, (ii) the opportunity to re-examine his fingerprint comparison, (iii) a continuance of his hearing on the revocation of his supervised release, and (iv) his release pending the revocation hearing. (D.I. 107.) Af-

ter an overview of the background related to these motions, the Court will render its decision.

## NATURE AND STAGE OF THE PROCEEDINGS

After pleading guilty to one count of conspiracy to possess with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) and 21 U.S.C. § 846, this Court entered judgment against Clarence McNickles and sentenced him to 33 months in prison, followed.by 5 years of supervised release. On or about March 13, 1992, McNickles was released from prison and began his period of supervised release under the supervision of the United States Probation Office in the Northern District of Texas.

On April 25, 1996, the United States Probation Office for the District of Delaware filed the Revocation Petition, alleging that McNickles violated Standard Conditions Nos. 1, 2, 7 and 11 of his supervised release.[1] After receiving the Revocation Petition, this Court issued a warrant for McNickles' arrest and removal to the District of Delaware for a hearing to determine if he violated the conditions of his supervised release. McNickles was arrested and removed to this district. He is currently incarcerated, awaiting resolution of these motions and a hearing on modification or revocation of supervised release.

## FACTS

The Revocation Petition filed in this case alleges that McNickles violated Standard Conditions Nos. 1, 2, 7 and 11 of his supervised release. The violation alleged under Standard Condition No. 7 arose from a random urinalysis taken on April 6, 1995, more than a year prior to the filing of the Revoca-

tion Petition. The violations alleged under Standard Conditions Nos. 1, 2 and 11, stem from an alleged stop of McNickles by officers of the Ruston, Louisiana police department on December 21, 1995. Because these incidents are central to the resolution of these motions, further discussion of their factual background is warranted.

## I. Basis for Violation of Standard Condition No. 7

On April 6, 1995, McNickles submitted to a random urine test and submitted a written statement indicating that he had taken Vicodin. Following testing of McNickles' April 6, 1995 urine sample, Pharmchem Laboratories, Inc. ("Pharmchem") reported a positive result for the presence of phencyclidine. This report, dated April 18, 1995, was received by Mr. Shannon, McNickles' probation officer, on April 20, 1995. When confronted with the results, McNickles denied any contact with phencyclidine. Upon Shannon's request, Pharmchem retested the sample. As stated in the Pharmchem report dated April 27, 1995, the re-analysis confirmed the presence of phencyclidine. Despite the positive test result, Shannon continued the period of supervised release without reporting the test results to the Court. On September 7, 1995, during a meeting with his probation officer, McNickles allegedly retracted his earlier denial of any "contact" with phencyclidine and stated that he had been working with pitbulls who were injected with phencyclidine to make them more ferocious. McNickles speculated that his work with the pitbulls may have been the reason for his positive test results. Again, Shannon continued the period of supervised release, without reporting this incident or the drug test results to the Court.

*Standard Condition # 7:* The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substances, or any paraphernalia related to such substances, except as prescribed by a physician.

*Standard Condition # 11:* The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

---

1. The Standard Conditions McNickles allegedly violated are stated in the Amended Petition on Probation and Supervised Release (D.I. 102.) as:

    *Standard Condition # 1:* The defendant shall not leave the judicial district without the permission of the Court or probation officer.

    *Standard Condition # 2:* The defendant shall report to the probation officer as directed by the Court or probation officer and shall submit a truthful and complete written report within the first five days of each month.

## II. Basis for Violation of Standard Conditions Nos. 1, 2, and 11

On December 18, 1995, McNickles asked Shannon for a travel pass to visit his hospitalized grandmother. Unable to verify the basis for the request, Shannon denied the pass. On the following day, McNickles renewed his request for a travel pass, this time citing marital problems. Again, Shannon denied the travel pass. Two days later, on December 21, 1995, McNickles was allegedly stopped by law enforcement officers in Ruston, Louisiana.

According to the police report, an Officer Watson and his partner stopped a vehicle for following too closely to the vehicle in front of it. While stopping the offending vehicle (the "first vehicle"), Officer Watson observed a second vehicle pull off the shoulder of the road at the same time, approximately 100 yards down the highway. After receiving consent to search the first vehicle, Officer Watson found plastic bags containing 30.8 pounds of marijuana. Immediately, upon discovery of the marijuana, Watson arrested the occupants of the first vehicle and completed his search. When questioned about the second vehicle that had pulled over down the road, the occupants of the first vehicle identified the passenger of the second vehicle as Clarence McNickles and stated that McNickles had offered them $200.00 to drive the first vehicle to New York.

Shortly thereafter, Deputy Greg Franklin, a member of the Louisiana Narcotics Enforcement Team, responded to the location of the traffic stop. After being informed of the circumstances of the stop and search, Franklin questioned the occupants of the second vehicle, which had pulled over down the highway. The passenger of the second vehicle identified himself as Clarence McNickles, using a Texas picture driver's license. After questioning the purported Mr. McNickles, Deputy Franklin requested a criminal history check for Clarence McNickles and learned that Clarence McNickles was on Federal Probation. Deputy Franklin asked McNickles whether he knew the occupants of the first vehicle. McNickles denied any knowledge of the occupants and was released after Deputy Franklin informed McNickles that he would report the incident to McNickles' probation officer in Texas. Subsequently, Deputy Franklin submitted the bags of marijuana to the North Louisiana Criminalistic Laboratory ("Lab") for fingerprint analysis.

When questioned by Shannon about the December 21, 1995 Louisiana traffic stop, McNickles denied being in Louisiana on December 21, 1995. As a result of McNickles' denial, Shannon contacted Deputy Franklin on January 4, 1996. Pursuant to their conversation, Shannon sent Deputy Franklin a picture and fingerprints of McNickles. Upon reviewing the photograph, Deputy Franklin, Officer Watson and Watson's partner each positively identified the individual in the photo as the "Clarence McNickles" that had been the passenger of the second vehicle that was stopped by Officer Watson on December 21, 1995 in Louisiana.

After being advised that an analyst in the Lab had found latent prints on the seized bags of marijuana, Deputy Franklin submitted the McNickles fingerprint cards to the Lab for comparison. The Lab determined that a latent print from one of the bags containing marijuana matched McNickles' right ring finger. On March 13, 1996, a Louisiana state court judge issued an arrest warrant for McNickles, charging him with knowingly and intentionally possessing with intent to distribute marijuana, in violation of Louisiana Revised Statutes 40:966.

## DISCUSSION

As previously stated, the instant motions seek relief in the alternative. In his Motion to Dismiss, McNickles asks the Court to dismiss the Revocation Petition. If the Court denies the Motion to Dismiss, McNickles' Related Relief Motion asks the Court to allow him to retest the April 6, 1995 urine specimen, permit him to re-examine the fingerprint comparison, continue the hearing on the Revocation Petition and release him from custody pending a revocation hearing which he requests be held subsequent to a disposition of the pending Louisiana charges. For the reasons discussed below, the Court will grant in part and deny in part the Motion to Dismiss and the Related Relief Motion.

## I. Motion to Dismiss the Revocation Petition

In his Motion to Dismiss the Revocation Petition, McNickles raises two primary arguments. First, McNickles argues that the Court should dismiss with prejudice the claim that he violated Standard Condition No. 7 of his supervised release by using or possessing drugs. Second, McNickles argues that the Court should dismiss without prejudice the remaining claims that he violated Standard Conditions Nos. 1, 2, and 11 by: (1) going to Louisiana without his probation officer's permission; (2) submitting an untruthful report to his probation officer and (3) failing to inform his probation officer that he was questioned by the police. The Court will address the merits of each of these arguments in turn.

### A. Whether the Court Should Dismiss with Prejudice the Claim that McNickles Violated Standard Condition No. 7 of His Supervised Release

In addition to challenging the factual basis of the claim that he violated Standard Condition No. 7, McNickles argues that the claim violates his due process rights. Specifically, McNickles argues that Shannon's failure to promptly bring the claim and to preserve the urine sample deprives him of due process by prejudicing his ability to defend himself against the charge.

Under 18 U.S.C. § 3583(e)(3), a court may revoke a term of supervised release, if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. The "preponderance" standard is satisfied in this context, when the court, sitting as trier of fact, believes that " 'the existence of a fact is more probable than its nonexistence.' " See e.g. Brown v. Fauver, 819 F.2d 395, 396 (3d Cir.1987) (citations omitted). As a threshold finding, the Court is persuaded that sufficient evidence exists to prove by a preponderance of the evidence that McNickles violated Standard Condition No. 7 of his supervised release by possessing and using phencyclidine. See Govt. Ex. 1 and 2 (drug test results). Because the Court finds the Government's test results and other evidence to be credible, the Court must reject any assertion that the claim lacks a sufficient basis in fact. While it is true that McNickles had not had any other positive drug test results during his four years of supervised release, it is well established in the Third Circuit that one positive drug test result is sufficient to revoke probation. See United States v. Boyd, 961 F.2d 434 (3d Cir.) (upholding revocation of probation when only one of fifty urine specimens collected tested positive), cert. denied, 506 U.S. 881, 113 S.Ct. 233, 121 L.Ed.2d 168 (1992). However, despite the Court's findings and its ability to revoke McNickles' probation based on his single positive drug test, the Court believes that, under the circumstances of this case, the claim should be dismissed.

Section 7B1.2(b) of the Sentencing Guidelines, provides:

> The probation officer shall promptly report to the court any alleged Grade C violation unless the officer determines: (1) that such violation is minor, and not part of a continuing pattern of violations; and (2) that non-reporting will not present an undue risk to an individual or the public or be inconsistent with any directive of the court relative to the reporting of violations.

In this case, Officer Shannon failed to promptly report McNickles' alleged Grade C violation to the Court. Rather than litigate McNickles' violation, Officer Shannon chose to continue supervision. It was not until other allegations arose against McNickles, that Officer Shannon decided to raise the one year old drug test violation. It is the Court's view that the decision by Officer Shannon to continue supervision of McNickles with the violation in place has addressed the unlawful conduct and any action the Court might take against McNickles for that conduct. Therefore, the Court will exercise its discretion to dismiss the claim that McNickles violated Standard Condition No. 7 of his supervised release.[2]

2. While McNickles raises the delay in reporting the violation in the context of a Fifth Amendment due process claim, the Court is not persuaded that the circumstances support such a claim.

B. *Whether the Court Should Dismiss Without Prejudice the Claim that McNickles Violated Standard Conditions Nos. 1, 2, and 11 of His Supervised Release*

■ In the second aspect of his Motion to Dismiss, McNickles argues that the Court should dismiss without prejudice the charges in the Revocation Petition that he violated Standard Conditions Nos. 1, 2 and 11 by traveling outside of Texas without permission, failing to truthfully report to his probation officer that he was out of Texas and failing to report that he was questioned by police in Ruston, Louisiana. In support of the relief he seeks, McNickles argues that he should not be required to contest the violation of supervised release charges prior to the adjudication of the pending Louisiana criminal charge. Specifically, McNickles contends that a state court acquittal could moot the charges in the Revocation Petition or that prosecution of the Revocation Petition could produce an inconsistent finding which would prejudice his ability to defend against the state charges. In response, the Government argues that the evidence against McNickles is so strong that McNickles will not be prejudiced by the Court conducting the revocation hearing prior to the Louisiana proceedings.

Neither McNickles nor the Government contest that the Court has broad discretion in determining when to hold McNickles' revocation hearing. While the Court is convinced that a continuance of the revocation hearing is warranted in this case, the Court is not persuaded that the charges should be dismissed without prejudice.

■ In reaching its conclusion, the Court is mindful that even if McNickles were to obtain a state court acquittal of the pending charges, the acquittal would have no bearing on the revocation issues before this Court. A violation of supervised release does not require a criminal conviction. This conclusion is consistent with the case law precedent in the Third Circuit involving the analogous situation of a violation of probation. *See United States v. Gordon,* 961 F.2d 426, 429 (3d Cir.1992) (indicating that defendant need not be formally charged or convicted with drug possession for conduct to be considered at probation revocation hearing). Moreover, the Court of Appeals for the Third Circuit has upheld the revocation of probation, despite a defendant's acquittal of the state charges underlying the revocation. *United States v. Chambers,* 429 F.2d 410, 411 (3d Cir.1970). While a criminal conviction requires proof beyond a reasonable doubt, a violation of supervised release merely requires a preponderance of the evidence. *See id.* at 411 (observing that probation may be revoked on basis of conduct which falls short of criminal conduct). Therefore, the same evidence that is insufficient to establish guilt beyond a reasonable doubt may be sufficient to establish a violation of supervised release.

McNickles' argument that a state acquittal would be inconsistent with a determination that he violated his supervised release, fails to take into account the different burdens of proof. When the different proof standards are considered, it is clear that an acquittal and a finding that McNickles violated conditions of his supervised release are not inconsistent as McNickles claims, but rather, may be entirely in accord with the facts adjudicated pursuant to the different burdens of proof. Thus, the Court concludes that no potential prejudice or due process violation exists that warrant a dismissal of the Revocation Petition at this time.[3]

---

The Court is convinced that McNickles' ability to defend against the charge was not impaired, even though his urine sample was no longer available for retesting. *See Boyd,* 961 F.2d at 436 (concluding that destruction of urine sample did not .pose due process violation where probationer could raise other challenges to evidence, including reliability of test results). Therefore, the Court's decision to dismiss this claim does not rest on due process grounds, but results only from an exercise of the Court's discretion.

**3.** While the Court concludes that a dismissal is not warranted because the possibility of an acquittal will not affect the revocation hearing pending before the Court, the Court does believe that a continuance of the revocation hearing may be in McNickles' best interest. The Court's reasons for granting the continuance are discussed in Part II of this Opinion.

Because the Court will deny McNickles' Motion to Dismiss the charges that he violated Standard Conditions Nos. 1, 2 and 11, the Court will proceed to consider the alternative Related Relief Motion.

## II. Motion for Alternative Related Relief

As an alternative to dismissal of the Revocation Petition, McNickles' asks this Court to afford him the following relief: (i) the opportunity to retest his urinalysis specimen, (ii) the opportunity to re-examine the fingerprint comparison, (iii) a continuance of the hearing on revocation of supervised release and (iv) his release pending the revocation hearing. Because the Court has dismissed with prejudice the claim that McNickles violated Standard Condition No. 7, McNickles' request to retest his urine sample is mooted. However, McNickles' remaining requests are viable and the Court will consider them in turn.

■ First, the Court will grant McNickles' request to re-examine the fingerprint comparison. As the Revocation Petition indicates, the Government relies on the latent fingerprint found on one of the bags of marijuana as evidence that McNickles violated Standard Conditions Nos. 1, 2 and 11. Therefore, as the Government concedes, McNickles' is entitled under the Fifth and Sixth Amendments to re-examine this evidence. Therefore, the Court will grant his request. Furthermore, because the Court finds that McNickles is financially unable to obtain an expert, the Court will authorize the payment for services of an expert pursuant to 18 U.S.C. § 3006A(e)(1).

■ Second, as indicated earlier, the Court will grant a continuance of the revocation hearing. The Court finds that a continuance will provide McNickles an opportunity to conduct the fingerprint re-examination and to prepare for the presentation of evidence by his expert witness. Additionally, if requested by McNickles, the Court will continue the revocation hearing until such time as the Louisiana state charges are adjudicated, so as to enable him and his counsel to determine the timing sequence they believe may be the most advantageous to their defense of the charges.

■ Lastly, the Court will deny McNickles' motion for revocation of the detention order issued pursuant to 18 U.S.C. § 3145(b). Under 18 U.S.C. § 3142(b) and (c), a person shall be released on his own recognizance, upon execution of an unsecured bond, or upon such other conditions as the court may impose, unless the court determines that such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." In making this determination, the Court must consider de novo the following factors: (1) the nature and seriousness of the offense charged; (2) the weight of evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct of history relating to drug, alcohol abuse and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir.1985) (requiring de novo review of detention orders under 18 U.S.C. § 3142). In this case, the factual basis underlying the alleged violations of supervised release involves the serious offense of intent to distribute 30.8 pounds of marijuana. Also, the Court takes notice that the violations enumerated in the Revocation Petition are arguably supported by evidence such as latent fingerprint analysis and photographic identification. *See* Govt.Br. at 10–12; Govt.Br.Ex. 3 (Franklin's Investigative Report), 4 (Watson Affidavit); Gov.Ex. 3 (latent fingerprint comparison). In addition, even though the violation alleged under Standard Condition No. 7 has been dismissed for other reasons, the Court attaches significance to it in the context of the release application. Given these factors, as well as the interstate nature of the remaining alleged violations of supervised release and the fact that McNickles' family primarily resides in Texas, the Court is not convinced that, in accordance with the applicable standard, McNickles would appear before the Court for his revocation hearing if he were released. *See* Govt.Br. 10–12; Def. Ex. 2 (McNickles' Affidavit). Moreover, given the nature of the alleged criminal charges underlying McNickles' alleged violations of supervised release, namely, intent to distribute, the Court finds that McNickles' release poses a danger to the community. Thus, for these reasons, the Court must deny McNick-

les' request for release pending a revocation hearing. The temporary detention order previously entered in this case will be continued, however, the Court will order McNickles' to be returned to Louisiana, if requested by him and his counsel, for the purpose of responding to the Louisiana state charges.

### CONCLUSION

For the reasons discussed, the Court will grant in part and deny in part McNickles Motion to Dismiss. Specifically, the Court will dismiss with prejudice the claim that McNickles violated Standard Condition No. 7, but will not dismiss the claim that McNickles violated Standard Conditions Nos. 1, 2 and 11. Regarding the Related Relief Motion, the Court will grant McNickles' request to re-examine the fingerprints and to continue the revocation hearing based on the remaining alleged violations, but will deny his request for release pending the hearing. The request for re-analysis of the urine specimen is mooted by the Court's decision to dismiss the alleged violation of Standard Condition No. 7.

An appropriate order will be entered.